656 P.2d 884

William L. BRUMMUND and Doris M. Brummund, husband and wife, Plaintiffs-Appellees,

v.

The FIRST NATIONAL BANK OF CLOVIS, New Mexico, a national banking association, Defendant-Appellant,

v.

Ishwarbhai D. PATEL and Ramilaben I. Patel, husband and wife; Dahyabhai M. Patel and Maniben D. Patel, husband and wife; Ashok R. Bhakta and Padmavati A. Bhakta, husband and wife; and Gokal M. Bhakta, as Trustee of the Gokal M. Bhakta Family Trust, Defendants-Appellees.

No. 14265.

Supreme Court of New Mexico.

Jan. 4, 1983.

Edwin B. Tatum, Walker & Tatum, Clovis, for plaintiffs-appellees.

Harry L. Patton, Clovis, for defendants-appellees.

Robert C. Brack, Clovis, Poole, Tinnin & Martin, Robert C. Poole, Robert H. Jacobvitz, Albuquerque, for defendant-appellant.

## OPINION

FEDERICI, Justice.

The plaintiffs-appellees, William L. Brummund and Doris M. Brummund (plaintiffs), brought this action in the District Court of Curry County seeking declaratory relief. The plaintiffs sought a declaratory judgment invalidating certain provisions in a security agreement and financing statement between them and the First National Bank of Clovis, New Mexico, the defendants-appellants (defendant). Also named in the action were the purchasers of the collateral, the Patels. The district court entered its declaratory judgment holding that as a matter of law a provision in the security agreement prohibiting transfer of the collateral without prior notice to the lender was void and unenforceable because it violated Section 55–9–311, N.M.S.A.1978. The defendant appeals. We reverse.

The record shows that the defendant is the holder of a promissory note executed by the plaintiffs in the amount of $150,000.00. The note was secured by certain personalty located at the King's Inn Motor Motel at Clovis, New Mexico. The note was further secured by a commercial mortgage covering certain real property located in Clovis, namely, the King's Inn Motor Motel and the Rodeway Inn. At the time of the execution of the note, Mr. Brummund was an employee of the defendant.

Thereafter, the plaintiffs sold the personalty and realty covered by the security agreement to the Patels without notifying or seeking the consent of the defendant. Upon becoming aware of the sale of the property covered by the security agreement and financing statement, the defendant declared a default on the note and accelerated the balance due under the note, thus precipitating the declaratory judgment action by the plaintiffs.

This case involves an interpretation of the security agreement provision in question and of Section 55–9–311. The security agreement reads in part:

Without the prior written consent of Bank, Debtor will not sell, exchange, lease or otherwise dispose of the Collateral or any of Debtor's rights therein or under this Agreement * * *.

\* \* \* \* \* \*

Debtor shall be in default hereunder upon failure to pay when due any amount payable hereunder ... or perform any of Debtor's other agreements herein contained * * * or if Bank in good faith believes its prospect of payment or performance is impaired. Thereupon, all sums secured hereby shall become imme-

diately due and payable at Bank's option * * *.

Section 55–9–311 provides:

The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default.

The principal issue in this case, therefore, is whether Section 55–9–311 serves to permit a debtor to sell personal property, otherwise secured as collateral, notwithstanding a provision in a security agreement stating that to do so constitutes an event of default. The district court held that there was "no need to resort to interpretation of the clear language" of Section 55–9–311 which gives the debtor the right to sell the collateral despite any such security agreement provision making the transfer a default. We disagree.

This case is presented to us as a case of first impression in New Mexico. Strictly speaking, it is not. *See Ryan v. Rolland,* 434 F.2d 353 (10th Cir.1970). The district court's interpretation of the section has some plausibility. However, the great weight of authority of case law in other jurisdictions, and of the Uniform Commercial Code commentators, is that while Section 55–9–311 does permit a debtor to transfer his interest in collateral, this section does *not* serve to avoid a contract provision making an unconsented transfer of the collateral a default. *Legg v. Kelly,* 412 So.2d 1202 (Ala.1982); *Sturdevant v. First Sec. Bank of Deer Lodge,* Mont., 606 P.2d 525 (1980); *Poydan, Inc. v. Agia Kiriaki, Inc.,* 130 N.J.Super. 141, 325 A.2d 838 (Ch.Div. 1974), *aff'd.* 139 N.J.Super. 365, 354 A.2d 99 (App.Div.1976); *Production Credit Ass'n, Etc. v. Nowatzski,* 90 Wis.2d 344, 280 N.W.2d 118 (1979); J. White and R. Sum-

mers, Handbook of the Law Under the Uniform Commercial Code § 26–7 (1980); Hogan, Pitfalls in Default Procedure, 2 U.C.C. L.J. 244 (1970).

The problems in this area of the law are well illustrated by Hogan, Pitfalls in Default Procedure, *supra,* at 246–47, where he states:

One of the troublesome areas in the statute is Section 55–9–311, which seems to say that the debtor has a right to transfer his interest in the collateral, and it seems to be an unrestricted right to transfer his interest in the collateral. That raises a question. Suppose in the security agreement, as you should, you have said that a default occurs if the debtor sells the collateral. If you have as collateral anything that is not inventory, you want that kind of protection in the definition of default in your security agreement.

*Some people have suggested that Section 55–9–311 prohibits you from using a transfer of the collateral as the basis of a default. I think that thus far neither the statute nor the cases (footnote omitted) support that conclusion.* Section 9–311 merely preserves the interest of the transferee. [For example] [i]f the debtor sells the car, the transferee gets whatever the debtor had. Yet the sale can still be a default * * *.

The definition of default is not provided in the Code. Default is a matter to be defined by your agreement. (Emphasis added.)

▇▇▇ In this case, the plaintiffs sold the property secured by the promissory note but did not inform, or seek the consent beforehand, of the defendant as provided in the security agreement. The fact that collateral may be transferred voluntarily or involuntarily as provided in Section 55–9–311 does not destroy or adversely affect a prior perfected security interest.[1] And irre-

---

1. It is generally stated that Section 55–9–311 and Section 55–9–306(2), N.M.S.A.1978 must be read together. Section 55–9–306(2) provides in part: "(2) Except where this article otherwise provides, *a security interest contin-*

*ues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor* unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable

spective of Section 55–9–311, it is evident that a provision in a security agreement may forbid transfer of collateral without prior consent or make such a transfer default. *Poydan, Inc. v. Agia Kiriaki, Inc., supra.* Once the parties have agreed to such a security agreement provision, and a violation thereof constituting a default, the security agreement provision will be enforced to the extent that it makes a transfer an event of default. 69 Am.Jur.2d *Secured Transactions* § 211 (1973). Where the collateral is personalty, the ability to accelerate indebtedness upon an unconsented transfer is not only reasonable but essential for the creditor because of the risk of impairment of the security interest. The fact that here the installment payments on the note have been paid, and there does not appear to be any other condition of default except for the unconsented transfer, does not dissuade us from holding that the security agreement provision defining a default is enforceable. *Poydan, Inc. v. Agia Kiriaki, Inc., supra,* is noteworthy, because in *Poydan* the court held that an unconsented transfer of corporate stock constituted a default under a security agreement provision, thus permitting the creditor to call the balance due under the promissory note that the debtor had executed. The court said "[i]t was not unreasonable for the creditors to reserve the right to determine whom they will accept as their debtor in possession of the security." 325 A.2d at 843. Here, too, we cannot say that it is unreasonable to allow a creditor to evaluate the solvency and credit worthiness of the potential transferee before he decides to acquiese to any transfer of the collateral.

We need not discuss in this case whether the acceleration of the balance due on the note was predicated on "good faith." *See* Section 55–1–208, N.M.S.A. 1978; *McKay v. Farmers & Stockmens Bank of Clayton,* 92

N.M. 181, 585 P.2d 325 (Ct.App.1978). It is generally well acknowledged that Section 55–1–208 deals with what are referred to as "at will" or "when he deems himself insecure" creditor option clauses. *Crockett v. First Federal S. & L. Ass'n, Etc.,* 289 N.C. 620, 224 S.E.2d 580 (1976). However, those clauses are distinguishable from default-type clauses "where the right to accelerate is *conditioned* upon the occurrence of a condition which is within the control of the debtor." 224 S.E.2d at 588. *See also Matter of Sutton Investments, Inc.,* 46 N.C.App. 654, 266 S.E.2d 686 (1980); *Ashley v. Leitch,* 533 S.W.2d 831 (Tex.Civ.App.1975). Plaintiffs could have avoided the condition precedent constituting an event of default by complying with the instant security agreement provision. They did not. We have held that an acceleration clause will be enforced in both law and equity. *Foreman v. Myers,* 79 N.M. 404, 444 P.2d 589 (1968). Accordingly, we are of the opinion that in this case the security agreement provision is enforceable, and is not otherwise in conflict with Section 55–9–311, and that acceleration of the balance due is valid and enforceable.

The district court further found that the security agreement provision constituted an unreasonable restraint on alienation of property at common law and is therefore void. We disagree.

 As previously noted, the purpose behind Section 55–9–311 and the security agreement provision is to maintain the efficacy of the creditor's security interest in the collateral. But, nothing in either the statute or the provision in the security agreement serves to restrain the plaintiff's right to transfer the collateral. *Sturdevant v. First Sec. Bank of Deer Lodge, supra.* Here, the section and security agreement provision merely track the security interest

---

proceeds, including collections, received by the debtor * * *." (Emphasis added.) Therefore, it is plain that the security interest of the creditor follows the collateral once the interest is perfected. *Am. Heritage Bank & Trust Co. v.*

O. & E., Inc., 40 Colo.App. 306, 576 P.2d 566 (1978); *Sturdevant v. First Sec. Bank of Deer Lodge, supra; Southwest Wash. Prod. Credit v. Seattle, etc.,* 92 Wash.2d 30, 593 P.2d 167 (1979).

of the creditor, permits the transferee to take such interest in the collateral as did his transferor and defines an event of default. Where the Uniform Commercial Code has displaced the common law, common law principles no longer apply. Section 55–1–103, N.M.S.A.1978; *Rutherford v. Darwin,* 95 N.M. 340, 622 P.2d 245 (Ct.App.1980). Because Section 55–9–311 covers the entirety of this area of the law, and leaves an event of default to be determined by the parties, we hold that under the facts and circumstances of this case the common law was displaced by the Uniform Commercial Code as adopted in New Mexico.

*State ex rel. Bingaman v. Valley Sav. & Loan,* 97 N.M. 8, 636 P.2d 279 (1981), relied upon by plaintiffs is distinguishable both on the facts and on the law. In *Valley,* this Court held that "due on sale" clauses which permit acceleration of payment upon transfer of *residential* property or assumption of mortgages without a showing of substantial impairment to the lender's security interest are unenforceable as unreasonable restraints on alienation. The statute involved in *Valley,* Section 48–7–11, N.M.S.A.1978 (Cum.Supp.1982), was limited to transfers of *residential* property. *Valley* does not apply. In this case, there is involved a commercial mortgage and a security interest in personalty. We conclude that a provision in a security agreement and in a commercial mortgage making an unconsented transfer of commercial personalty and realty an event of default, and giving rise to an option to accelerate the balance due, is not a restraint on alienation in violation of the common law.

Finally, the district court determined that the defendant was not entitled to attorney fees since it had held that the provisions of the security agreement restraining the alienation of property were void and unenforceable. Necessarily, because we have determined that the security agreement is enforceable, and that there exists no restraint on alienation, defendant is entitled to reasonable attorney fees as provided in the security agreement. *Budagher v. Sunnyland Enterprises, Inc.,* 90 N.M. 365, 563 P.2d 1158 (1977); *Cabot v. First National Bank of Santa Fe,* 81 N.M. 795, 474 P.2d 478 (1970).

We reverse and remand for further proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

PAYNE, C.J., and RIORDAN, J., concur.