JOHN K. OLEAN *v.* FRANK TREGLIA ET AL.
(10804)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued May 11—decision released July 26, 1983

*Robert G. Zaneski*, for the appellants (named defendant et al.).

*Robert A. Fuller*, with whom was *Louis S. Ciccarello*, for the appellee (plaintiff).

*Theodore M. Space* and *Mary M. Ackerly* submitted a brief as amici curiae.

PETERS, J. This case involves the enforceability of a due-on-sale clause in an action by a private lender to foreclose a mortgage on income-producing residential property. The plaintiff, John K. Olean, brought an action for strict foreclosure and other relief against the defendants, Donald A. Byington and Shirley Byington, Samuel E. Pair and Mary E. Pair, and Frank Treglia, Michael Treglia and Patrick Treglia. After a hearing, the court granted the plaintiff a judgment of strict foreclosure, from which only the defendants Treglia have appealed.

The underlying facts are established by the trial court's memorandum of decision and the pleadings. The plaintiff, prior to March 28, 1969, owned property in Norwalk.[1] On that date, he sold the property to the Byingtons for $150,000, taking back a $120,000 recorded purchase money mortgage at six and one-half percent interest for a term of twenty years. On July 7, 1970, the Byingtons transferred their interest in the real estate to the Pairs, and the Pairs, on June 19, 1979, transferred their interest to the Treglias, all transfers occurring by duly recorded warranty deeds.

The mortgage deed between the plaintiff and the Byingtons contained the following acceleration clause: "If title to the premises which are mortgaged to secure

---

[1] The property was described by the plaintiff's appraiser as consisting of nine separate parcels, four vacant lots and five frame residential structures (four multi-family dwellings and one cottage).

this note shall become vested in anyone other than the makers hereof, then the whole principal of this note and the interest thereon shall, at the option of the holder, become immediately due and payable without the necessity of demand or notice." When the Byingtons sold the property to the Pairs, themselves taking back a purchase money mortgage, the plaintiff agreed, in writing, not to exercise the acceleration clause but expressly reserved his right to accelerate "in the event a future disposition of the property is contemplated." The Pairs assumed payment of the plaintiff's mortgage. When the Pairs transferred their interest to the defendants Treglia, subject to the plaintiff's mortgage and the Byingtons' mortgage, the plaintiff was not notified. The plaintiff has not expressly consented to the transfer to the Treglias.

The plaintiff first learned of the transfer to the defendants Treglia in July, 1979, when he received a mortgage payment from the Treglias. The plaintiff did not cash this check but turned it over to his attorney with instructions to notify the Treglias of the acceleration clause and to call the mortgage unless new terms, essentially an increase in the interest rate from six and one-half percent to twelve percent, could be negotiated. Between July and November of 1979, the plaintiff's attorney communicated with the attorney for the Treglias and the Treglias themselves, to inform them that the acceleration clause would be exercised unless the mortgage could be renegotiated to bring its interest rate into line with current rates. During these negotiations, the Treglias continued to tender mortgage payments which the plaintiff retained but did not cash. On November 26, 1979, the Treglias were advised by letter that the mortgage would be foreclosed unless they forwarded, by November 30, 1979, a certified check reflecting the proposed increased interest rate. When

the Treglias failed to comply with this demand, the plaintiff commenced the present action on December 6, 1979.

On this finding of facts, the trial court concluded that the plaintiff had properly exercised his option to accelerate. With respect to the option's validity, the court concluded that the due-on-sale clause was not an unreasonable restraint on alienation and that the defendants had not established that enforcement of the clause would be unconscionable. The court held that the plaintiff was entitled to recover $87,763.90 on the underlying indebtedness, as well as $6000 for attorney's fees and $700 for appraisal fees, and ordered strict foreclosure and set appropriate law days.

The appeal of the defendants Treglia contests each of the trial court's conclusions of law. The defendants claim that the acceleration clause in the plaintiff's mortgage is unenforceable because: (1) a due-on-sale clause is an unreasonable restraint on alienation; (2) the plaintiff failed to give notice of default and to make demand for payment before commencing his foreclosure action; (3) the plaintiff failed to exercise his option to accelerate within a reasonable time and failed to give reasonable notice of his intent to exercise it; and (4) the plaintiff waived his option to accelerate by consenting to a prior transfer without acceleration. We find no error.

I

The first issue on this appeal is whether a due-on-sale clause constitutes an unreasonable restraint on alienation. Although the validity of due-on-sale clauses has not previously been directly addressed by this court, we do not write on an entirely clean slate. In this state, we are counseled to uphold such clauses both by common law precedent and by legislative expressions of public policy. From other states, we are guided by an

ever growing line of cases adopting the view that due-on-sale clauses do not fall within the prohibited ambit of illegal restraints on alienation but rather are presumptively valid contractual undertakings.

In Connecticut, an early precursor of a due-on-sale clause came into litigation in *Lewis* v. *Culbertson,* 124 Conn. 333, 336–39, 199 A. 643 (1938). In that case, the mortgage note provided that " 'upon failure to obtain the written assumption and agreement to pay this note according to its terms by the grantee in the event of a conveyance, then the entire balance remaining unpaid hereon shall immediately become due and payable at the option of the holder hereof.' " Id., 336. This court held that a default permitting acceleration had occurred when the mortgaged real property was conveyed by the mortgagor "subject to mortgages and encumbrances of record"; Id., 335; even though the grantee, through a private vote of its board of directors, had agreed to assume the mortgage. Id., 339. The opinion in this court did not address the issue of illegal restraints on alienation but noted only that a mortgagee was entitled to bargain contractually for a form of conveyance that would enable a mortgagee to bring a direct suit against a subsequent owner of the equity of redemption. Under General Statutes § 52-75, which was General Statutes (1930 Rev.) § 5489 when *Lewis* v. *Culbertson* was decided, a direct action was possible against a grantee who "shall assume and pay such encumbrance . . . ."

*Lewis* v. *Culbertson,* although not identical to the present case, is nevertheless instructive on two counts. The mortgagee in that case was held entitled to exercise his option to accelerate, because that was what the mortgage note provided, without having first to demonstrate that a subsequent conveyance in fact impaired his security. Further, the opinion notes that a mort-

gagee has less need to call a mortgage when a subsequent taker "assumes" the mortgage than he would if the transferee merely took "subject" to the mortgage. Id., 338–39. In the present case, the Pairs, upon receiving consent for the transfer from the original mortgagors, "assumed" the mortgage, while the Treglias only took the property "subject" to the recorded mortgage to the plaintiff.[2] *Lewis* v. *Culbertson* is thus a precedent for the proposition that, in Connecticut, contracting parties have the power to make unauthorized transfers of mortgaged property an event of default, triggering an acceleration clause, especially when an unauthorized transfer places the property in the hands of grantees who fail to assume the recorded mortgage. See also *Society for Savings* v. *Bragg*, 38 Conn. Sup. 8, 444 A.2d 919 (1982).

On the legislative front, there are no statutes that directly control real property due-on-sale clauses negotiated in 1969, when the plaintiff's mortgage was recorded. The legislature has nonetheless indicated, in related statutes, that the public policy of this state does not consider such clauses to be illegal restraints on alienation.

In 1979, the General Assembly enacted General Statutes § 36-9g to regulate alternative mortgage

---

[2] The defendants challenge the trial court's finding that the Pairs assumed the mortgage, claiming that this finding is unsupported by the evidence. This challenge cannot, however, succeed in light of the recorded deed between the Byingtons and the Pairs, which was an exhibit in the trial court, in which the grantees expressly "assume and agree to pay" the mortgage to John K. Olean.

The defendants do not dispute the well established distinction between a conveyance in which the grantees take "subject" to a mortgage and one in which the grantees "assume" the mortgage. See Osborne, Nelson & Whitman, Real Estate Finance Law (1979) §§ 5.2 through 5.4.

loans.[3] In that context, the legislature allowed financial institutions, upon the agreement of the mortgagor and the mortgagee, to stipulate that the entire unpaid balance of a reverse annuity mortgage loan might become due and payable upon "[t]he sale or other transfer of the real estate securing the loan to a person other than any of the original mortgagors." General Statutes § 36-9g (f) (2) (B). Presumably the legislature expressly authorized such clauses in order to encourage financial institutions to offer alternative mortgages to the borrowing public. Having conferred such authority upon institutional lenders, however, it is unlikely that legislative policy would thereafter deprive private lenders of the power to include similar clauses in conventional mortgages.

A second source of legislative policy is the Uniform Commercial Code.[4] We have on several occasions recognized that the code, General Statutes § 42a-1-101 et seq., although formally limited to transactions involving personal property, may furnish a guide for the law governing real property mortgages. *Conference Center Ltd.* v. *TRC*, 189 Conn. 212, 225, 455 A.2d 857 (1983); *Hamm* v. *Taylor*, 180 Conn. 491, 494–95, 429 A.2d 946 (1980). For present purposes, we may usefully consult General Statutes § 42a-9-311, concerning the alienability of a debtor's rights in collateral held as security under an article 9 security interest in personal property, because the policy of § 42a-9-311 expresses the same concern to limit restraints on alienation as is reflected in the common law of real property.

---

[3] The 1979 legislation, Public Acts 1979, No. 79-158, was intended to create greater incentives for alternatives to standard mortgages than a similar act had provided in the previous year. Public Acts 1978, No. 78-114. Nothing in the legislative history of the revised General Statutes § 36-9g addresses due-on-sale clauses in particular.

[4] The Uniform Commercial Code, which became effective in 1961, was fully operational when the plaintiff's mortgage was negotiated and recorded.

Section 42a-9-311 affords a debtor an unqualified right to alienate his interest in secured property "notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default."[5] We have not had the occasion to interpret this section. In other jurisdictions, however, the great weight of authority is that the section, although permitting unfettered alienation, does not invalidate a contract provision making transfer of the collateral without the consent of the secured party an event of default. *Legg* v. *Kelly*, 412 So. 2d 1202, 1207 (Ala. 1982); *Sturdevant* v. *First Security Bank of Deer Lodge*, 606 P.2d 525, 528 (Mont. 1980); *Poydan, Inc.* v. *Agia Kiriaki, Inc.*, 130 N.J. Super. 141, 147–48, 325 A.2d 838 (Ch. Div. 1974), aff'd, 139 N.J. Super. 365, 354 A.2d 99 (App. Div. 1976); *Brummund* v. *First National Bank of Clovis*, 99 N.M. 221, 223, 656 P.2d 884 (1983); *Production Credit Assn. of Madison* v. *Nowatzski*, 90 Wis. 2d 344, 351–52, 280 N.W.2d 118 (1979); White & Summers, Uniform Commercial Code (2d Ed. 1980) § 26-7; Hogan, "Pitfalls in Default Procedure," 2 U.C.C.L.J. 244, 246–47 (1970). If unauthorized alienation can be made an event of default, then an acceleration clause triggered by such a default, like any other default-type acceleration clause, is enforceable according to its terms without requiring proof of impairment of security. *Brummund* v. *First National Bank of Clovis*, 99 N.M. 221, 224, 656 P.2d 884 (1983); *Crockett* v. *First Federal Savings & Loan Assn.*, 289 N.C. 620, 630, 224, S.E.2d 580 (1976); *Ashley* v. *Leitch*, 533 S.W.2d 831, 832 (Tex. Civ. App. 1975).[6]

---

[5] "[General Statutes] Sec. 42a-9-311. ALIENABILITY OF DEBTOR'S RIGHTS; JUDICIAL PROCESS. The debtor's rights in collateral may be voluntarily or involuntarily transferred, by way of sale, creation of a security interest, attachment, levy, garnishment or other judicial process, notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default."

[6] This result, according to the cited cases, does not conflict with General

Under the Uniform Commercial Code, therefore, in security transactions where the collateral is personal property, the statutory policy favoring free alienability of secured property is not violated by a security agreement making the exercise of the debtor's right to alienate an event of default that triggers the secured creditor's right to accelerate the due date of the unpaid indebtedness. This accommodation between the competing claims of alienability and security is readily transferable to transactions in which the collateral consists of real property. At the very least, the code requires us to recognize that there is no inherent conflict between our common law and statutory policy disfavoring restraints on alienation of property and our general disposition to enforce acceleration clauses triggered by the defaults of nonconsumer debtors.

We note further that while courts in other jurisdictions have taken conflicting stands on the enforceability of due-on-sale clauses, no court has invalidated such a clause as a direct restraint on alienation. A due-on-sale clause does not fall within the accepted definitions of a direct restraint on alienation because the clause does not purport to prohibit or to penalize the mortgagor's exercise of his power to alienate his property. See Simes & Smith, Law of Future Interests (2d Ed.

Statutes § 42a-1-208. That section provides: "[General Statutes] Sec. 42a-1-208. OPTION TO ACCELERATE AT WILL. A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral 'at will' or 'when he deems himself insecure' or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised." It is limited, however, to "at will" or "insecurity" acceleration clauses, and has no application to default-type acceleration clauses.

1956) § 1112; 4 Restatement, Property (1944) § 404.[7] At most, such a clause may be considered an indirect restraint on alienation because, as a practical matter, it may limit the mortgagor's power to make a profitable resale. The disagreement in the case law in other jurisdictions focuses on the circumstances that differentiate a permissible from an impermissible indirect restraint on alienation. Osborne, Nelson & Whitman, Real Estate Finance Law (1979) §§ 5.21–5.23.

In a minority of jurisdictions, enforcement of a due-on-sale clause is presumed to be an unreasonable restraint on alienation, and the mortgagee bears the burden of demonstrating the justifiability of his recourse to the clause, a burden ordinarily requiring evidence of impairment of the mortgagee's security or enhanced likelihood of default and foreclosure. See *Patton* v. *First Federal Savings & Loan Assn.,* 118 Ariz. 473, 477–78, 578 P.2d 152 (1978); *Tucker* v. *Pulaski Federal Savings & Loan Assn.,* 252 Ark. 849, 855, 481 S.W.2d 725 (1972); *Wellenkamp* v. *Bank of America,* 21 Cal. 3d 943, 951–53, 148 Cal. Rptr. 379, 582 P.2d 970 (1978); *Clark* v. *Lachenmeier,* 237 So. 2d 583, 584–85 (Fla. App. 1970); *Nichols* v. *Ann Arbor Federal Savings & Loan Assn.,* 73 Mich. App. 163, 168–74, 250 N.W.2d 804 (1977); *Sanders* v. *Hicks,* 317 So. 2d 61, 63–64 (Miss. 1975); *State ex rel. Bingaman* v. *Valley Savings & Loan Assn.,* 97 N.M. 8, 12, 636 P.2d 279 (1981); *Bellingham First Federal Savings & Loan Assn.* v. *Garrison,* 87 Wash. 2d 437, 441, 553 P.2d 1090 (1976).

---

[7] 4 Restatement, Property § 404 (1) provides the following definitions: "A restraint on alienation, as that phrase is used in this Restatement, is an attempt by an otherwise effective conveyance or contract to cause a later conveyance (a) to be void; or (b) to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey; or (c) to terminate or subject to termination all or a part of the property interest conveyed."

In the majority of jurisdictions, however, the burden of proof is the opposite. The due-on-sale clause is presumed to be a legal and reasonable restraint on alienation unless the mortgagor establishes that its enforcement, in that particular case, is unconscionable or inequitable. See *Williams* v. *First Federal Savings & Loan Assn.*, 651 F.2d 910, 915–16, 926–28 (4th Cir. 1981); *Tierce* v. *APS Co.*, 382 So. 2d 485, 487–88 (Ala. 1979); *Income Realty & Mortgage, Inc.* v. *Columbia Savings & Loan Assn.*, 661 P.2d 257, 259–65 (Colo. 1983); *Baker* v. *Loves Park Savings & Loan Assn.*, 61 Ill. 2d 119, 124–26, 333 N.E.2d 1 (1975); *Martin* v. *Peoples Mutual Savings & Loan Assn.*, 319 N.W.2d 220, 228–29 (Iowa 1982); *Dunham* v. *Ware Savings Bank*, 384 Mass. 63, 65–69, 423 N.E.2d 998 (1981); *Holiday Acres No. 3* v. *Midwest Federal Savings & Loan Assn.*, 308 N.W.2d 471, 480–84 (Minn. 1981); *Occidental Savings & Loan Assn.* v. *Venco Partnership*, 206 Neb. 469, 475–82, 293 N.W.2d 843 (1980); *First Commercial Title, Inc.* v. *Holmes*, 92 Nev. 363, 365–66, 550 P.2d 1271 (1976); *Mills* v. *Nashua Federal Savings & Loan Assn.*, 121 N.H. 722, 724–25, 433 A.2d 1312 (1981); *Century Federal Savings & Loan Assn.* v. *Van Glahn*, 144 N.J. Super. 48, 54–55, 364 A.2d 558 (1976); *Matter of Foreclosure of the Deed of Trust Executed by Bonder*, 306 N.C. 451, 458–61, 293 S.E.2d 798 (1982); *Crockett* v. *First Federal Savings & Loan Assn.*, 289 N.C. 620, 627–30, 224 S.E.2d 580 (1976); *First Federal Savings & Loan Assn.* v. *Kelly*, 312 N.W.2d 476 (S.D. 1981); *Gunther* v. *White*, 489 S.W.2d 529, 531–32 (Tenn. 1973); *Sonny Arnold, Inc.* v. *Sentry Savings Assn.*, 615 S.W.2d 333, 338–40 (Tex. Civ. App. 1981); *Redd* v. *Western Savings & Loan Co.*, 646 P.2d 761, 767 (Utah 1982); *Lipps* v. *First American Service Corporation*, 286 S.E.2d 215, 218–19 (Va.

1982); *Mutual Federal Savings & Loan Assn.* v. *Wisconsin Wire Works,* 71 Wis. 2d 531, 538–40, 239 N.W.2d 20 (1976).

We adopt the majority rule that due-on-sale clauses, because they serve a legal and useful purpose, fall within the category of restraints on alienation which our law deems to be permissible; see *Jones* v. *O'Connell,* 189 Conn. 648, 653, 458 A.2d 355 (1983); *Peiter* v. *Degenring,* 136 Conn. 331, 336, 71 A.2d 87 (1949); unless the mortgagor establishes, by a preponderance of the evidence, that the presumption of validity is overcome by circumstances that make enforcement of the clause unconscionable or inequitable. For purposes of argument, we may accept the proposition that acceleration of mortgage indebtedness pursuant to the clause is as likely to be triggered by the mortgagee's concern for renegotiating the interest rate in the mortgage note as in establishing the creditworthiness of the purchaser of the mortgaged property. There is nothing inherently illegal or unuseful in a retained contractual power to renegotiate interest rates upon an event controlled, like other events of default, by the mortgagor. In economic terms, what is at issue is the allocation of the value of a low-interest mortgage at the time when mortgaged property is resold. If such a mortgage is assumable, despite a due-on-sale clause, the reselling mortgagor will be able to sell his property at a premium reflecting favorable financing not otherwise available in the current market. If the due-on-sale clause is enforceable, this premium will be retained, in whole or in part, by the mortgagee. Enforcement of due-on-sale clauses allocates the windfall gain derived from rising interest rates to the lender, the mortgagee, rather than to the vendor, the mortgagor. Esaki, "Economic Effects of Enforcing Due-on-Sale Clauses," 7 Federal Reserve Bank of New York Quarterly Review, No. 4, 33–36

(1982–1983).[8] In principle, the risk of market fluctuations in the prevailing interest rates is best allocated by the contracting parties themselves. Judicial deference to freedom of contract is particularly appropriate in a case like the present one, where a private lender and a private borrower can be presumed to have had equal access to the financial marketplace when the mortgage was first negotiated. It is worth noting, furthermore, that the terms of the present mortgage would have permitted the mortgagor, in the event of declining interest rates, to prepay the mortgage without penalty.[9] Due-on-sale clauses are no less legal and useful than other security arrangements, such as mortgages due on demand or providing for variable interest rates, which are alternate devices for controlling the risk of interest rate fluctuations, and which furnish even less protection for the original mortgagor. We have recognized that financial institutions may

[8] If the lender is a financial institution rather than a private individual, enforcement of the due-on-sale clauses in the institution's portfolio of mortgages may well shift this gain from the individual mortgagor who is selling previously mortgaged property to the class of home mortgage borrowers currently seeking mortgage loans. The Federal Home Loan Bank Board has taken the position that enforcement of due-on-sale clauses is necessary to assure that funds for mortgage loans will continue to be available to the general home-buying public. Federal Home Loan Bank Bd. Adv. Op. No. 75-647 (July 30, 1975); see also Esaki, "Economic Effects of Enforcing Due-on-Sale Clauses," 7 Federal Reserve Bank of New York Quarterly Review, No. 4, 33–36, esp. 36 (1982–1983). The federal policy validating due-on-sale clauses in federal mortgages was upheld in *Fidelity Federal Savings & Loan Assn.* v. *de la Cuesta,* 458 U.S. 141, 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1982), and, with some exceptions, extended to state lenders by the Garn-St. Germain Depository Institutions Act of 1982, Pub. L. No. 97-320 § 341, 96 Stat. 1505, 12 U.S.C. § 1701j-3.

[9] The mortgage in the present case provided: "The privilege is reserved to prepay all or any part of the principal of this note at any time after January 1, 1970, but no payment on account of principal shall reduce the amount of the regular monthly installment or relieve the obligors from the obligation to pay the same on each successive regular paying date following such payment on account of principal until the entire indebtedness is fully paid." The mortgage was originally executed on March 28, 1969.

legitimately rely upon contractual devices designed to accommodate fluctuations in prevailing interest rates. See *Constitution Bank & Trust Co.* v. *Robinson,* 179 Conn. 232, 235–36, 425 A.2d 1268 (1979). It would be anomalous indeed to place greater constraints on private lenders like the present plaintiff. Finally, we believe it would be inappropriate to place greater constraints on lenders whose collateral is income-producing real property than on those whose collateral is income-producing personal property. As discussed earlier, the Uniform Commercial Code permits security agreements under Article 9 to make unauthorized transfers of secured collateral an event of default and hence an occasion for acceleration of the outstanding indebtedness. For all these reasons the due-on-sale clause in this case is presumptively enforceable.

## II

We turn then to a consideration of whether enforcement of the due-on-sale clause is, in the circumstances of the present case, unconscionable or inequitable. The defendants have made no claim that the due-on-sale clause was an unconscionable term in the mortgage as originally negotiated in 1969. Such a claim would have required a factual showing of one-sidedness that the present record does not contain. See *Hamm* v. *Taylor,* 180 Conn. 491, 494–96, 429 A.2d 946 (1980). The defendants contend instead that enforcement of the due-on-sale clause against them, in 1979, was inequitable because: (1) the plaintiff failed, in a timely fashion, to give notice of default and to make demand for payment before commencing his foreclosure action; (2) the plaintiff failed to exercise his option to accelerate within a reasonable time; and (3) the plaintiff had waived his right to enforce the due-on-sale clause by permitting an earlier transferee to assume the mortgage without foreclosure.

The defendants claim that the plaintiff offered no evidence to show how the defendants were in default or to demonstrate how the defendants had been notified of the exercise of the plaintiff's option leading to the defendants' default. In part, this argument is factually misguided. Only the defendants Treglia are pursuing an appeal from the judgment of the trial court, and they cannot rely on alleged failure of notification to other non-appealing defendants. As to the Treglias themselves, the trial court found that the plaintiff, as soon as he learned of the transfer of the mortgaged property to the defendants, notified them of the existence of the due-on-sale acceleration clause and informed them that the mortgage would be called unless new interest terms could be negotiated. He retained, but expressly refused to cash, all mortgage payments from the defendants. The defendants have cited no authority for their argument that retention of checks is inconsistent with a finding of default, and our case law is to the contrary. *Kelly* v. *Kowalsky,* 186 Conn. 618, 622–23, 442 A.2d 1355 (1982). What remains then is the trial court's conclusion that, until the plaintiff actually instituted his action for foreclosure of the mortgage, his conduct constituted merely a conditional threat and not an affirmative act giving notice of his intent to exercise his option to accelerate. The trial court determined, nonetheless, that the "conditional threat to call the mortgage . . . when considered together with plaintiff's final act of instituting suit [served to make] the plaintiff's intent to exercise the option . . . crystal clear."

We agree with the trial court that the plaintiff gave sufficient notice of his intention to invoke the due-on-sale acceleration clause. Under the law of Connecticut, a mortgagee is deemed to have taken legal title upon the execution of a mortgage on real property and there-

fore, in the absence of an agreement to the contrary, has a right to immediate possession against his mortgagor. *Conference Center Ltd.* v. *TRC,* 189 Conn. 212, 218, 455 A.2d 857 (1983); *Hartford Realization Co.* v. *Travelers Ins. Co.,* 117 Conn. 218, 224, 167 A. 728 (1933); *Desiderio* v. *Iadonisi,* 115 Conn. 652, 654, 163 A. 254 (1932); *Chamberlain* v. *Thompson,* 10 Conn. 243, 251 (1834). A fortiori, a mortgage in this state may validly provide, as in the present case, that "if any breach or violation of any of the covenants, agreements or provisions in the mortgage securing this note shall occur, then the principal of this note and the interest thereon shall, at the option of the holder, become immediately due and payable, without the necessity of demand or notice." Equity may nonetheless afford relief to a mortgagor who can prove that equitable circumstances require withholding of foreclosure or reduction of the amount of the stated indebtedness. See *Hamm* v. *Taylor,* supra, 497; *Hartford Federal Savings & Loan Assn.* v. *Lenczyk,* 153 Conn. 457, 463, 217 A.2d 694 (1966); *Glotzer* v. *Keyes,* 125 Conn. 227, 231, 5 A.2d 1 (1939); *Atlas Realty Corporation* v. *House,* 120 Conn. 661, 670, 183 A. 9 (1936); *Beach* v. *Isacs,* 105 Conn. 169, 176, 134 A. 787 (1926). Equitable considerations do not, however, require a mortgagee to refrain from good faith negotiations that may fend off foreclosure, or, when such negotiations fail, to interpose a formal notice of acceleration and default before an action of foreclosure is begun.

For similar reasons, we concur in the trial court's determination that the plaintiff exercised his option to accelerate in a reasonable time and in a reasonable fashion. The defendants claim, in effect, that the evidence at the trial did not support the trial court's findings in this regard. The trial court had before it, however, not only the plaintiff's own testimony about

his prompt response to information about the defendants' acquisition of the mortgaged property, but also exhibits consisting of correspondence addressed, in timely fashion, to the defendants and their attorney. The trial court expressly found that delays in pursuing negotiations were attributable to the defendants' attorney rather than to the plaintiff. Under these circumstances, the trial court's finding that five months was not an unreasonable period of time within which to exercise the option to accelerate is certainly not "clearly erroneous in view of the evidence and pleadings in the whole record." Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). The defendants again contest the adequacy of notice of the exercise of the acceleration clause, but our earlier discussion of demand and notice adequately responds to this assertion of error.

The defendants' final argument is derived from the plaintiff's waiver of the due-on-sale clause when the original mortgagors first transferred the mortgaged property to the Pairs. Having once waived the clause, the defendants argue, the plaintiff cannot thereafter enforce the clause against them. This argument depends upon a showing, contrary to the finding of the trial court, that the plaintiff in fact engaged in conduct that may reasonably be found to have constituted, as waiver requires, his "intentional relinquishment of a known right." *Multiplastics, Inc.* v. *Arch Industries, Inc.,* 166 Conn. 280, 286, 348 A.2d 618 (1974); *Brauer* v. *Freccia,* 159 Conn. 289, 295, 268 A.2d 645 (1970). The defendants do not, however, dispute the trial court's determination that, in the same letter in which the plaintiff declined to exercise his option to accelerate at the time of the 1970 sale, the plaintiff unequivocally reserved his right to exercise his option "in the event

a future disposition of the property is contemplated." This express reservation of rights, like a timely retraction of waiver; General Statutes § 42a-2-209 (5);[10] left the due-on-sale clause fully enforceable as to these defendants because, as to them, no right was ever "intentionally relinquished." These defendants are therefore bound by the due-on-sale clause contained in the publicly recorded mortgage. Whatever the propriety of the original transfer of the mortgaged property, the subsequent transfer to these defendants would normally constitute a default giving the plaintiff a renewed right to exercise his option to accelerate. See *S.H.V.C., Inc.* v. *Roy,* 188 Conn. 503, 511, 450 A.2d 351 (1982); *Piascyk* v. *Malon,* 116 Conn. 418, 424, 165 A. 352 (1933). While there may well be special circumstances of overreaching or misrepresentation that would permit a trier of fact to reach a different result, the present defendants, who bear the burden of proving waiver; see *Multiplastics, Inc.* v. *Arch Industries, Inc.,* supra, 285–86; have presented no such evidence.

We therefore conclude that on the present record the defendants cannot defeat foreclosure proceedings to enforce the plaintiff's mortgage containing a presumptively valid clause permitting acceleration of indebtedness upon an unauthorized transfer of mortgaged property. The defendants have failed to persuade the trial court or us of any circumstances that would make it unconscionable or inequitable in this case to give full effect to the due-on-sale clause.

There is no error.

In this opinion the other judges concurred.

---

[10] General Statutes § 42a-2-209 (5) provides: "A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver."