[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Plaintiff in this action seeks, inter alia, to enforce the alimony provision contained in a decree of Dissolution of Marriage entered on December 19, 1974 (the "Decree"). Additionally, she is seeking an upward modification of the alimony order as well as an allowance to cover the transportation costs which she incurred in traveling from Ohio (where she resides) in connection with these proceedings. The Defendant, who has never made any payments of alimony notwithstanding the provision contained in the Decree, contends that any effort by the Plaintiff to enforce the alimony provision is barred by one CT Page 6126 or more of the doctrines of laches, equitable estoppel and waiver. He further seeks a termination of the provision.
The Court finds the following facts. The parties were married on May 14, 1966 and soon thereafter had one minor child. Approximately eight years later, in 1974, the Plaintiff commenced an action for dissolution of marriage which resulted in the entry of the Decree. The Defendant neither appeared in the action nor was present at the time the Decree entered. The Decree provided,inter alia, that the Defendant was to pay $40 per week as child support and $10 per week as alimony. At the time the Decree entered, the Plaintiff was earning a gross wage of $110 per week (according to the financial affidavit which remains in the court file); she is currently employed at a bank in Ohio (and has been so employed for the past 12 years) where she earns a gross wage of $559.58 per week.[1] Since he did not appear in connection with the dissolution proceeding, there is no financial affidavit on file for the Defendant in connection with the entry of the Decree. He estimates that he was earning approximately $200 to $225 per week at that time; the Plaintiff estimated that Defendant was bringing home approximately $300 per week. He continues to work for the same employer and earns a gross wage of $710 per week, which sum is supplemented to a small degree by rents derived from the lease of two mobile homes which he and his brother own.
The Defendant received a written copy of the Decree soon after it was entered and observed that it contained the provision for payment of alimony to the Plaintiff at the rate of $10 per week. He testified that, upon learning of this provision, he had a discussion with the Plaintiff wherein she stated that she didn't want the money.[2] In response to the Court's inquiry, the Plaintiff testified that she could not recall, one way or the other, whether she and the Defendant talked about the alimony provision after the Decree entered. Relying upon their discussion, the Defendant never bothered to seek a modification of the Decree.
The Plaintiff has not remarried although she did cohabit with someone for a period of three years following the entry of the Decree. At some point, she returned to her home state of Ohio. The Defendant has since remarried.
The Defendant has always paid child support in accordance with the Decree. Indeed, the Plaintiff acknowledged that the Defendant had "gone beyond the call" for his daughter. Over the CT Page 6127 years, the Defendant has consistently sent extra money to the Plaintiff and the parties' daughter (who is now over 30 years of age).[3] In addition to the extra funds sent by the Defendant, he also lent the Plaintiff the sum of $1,000 in 1996 (more than 20 years subsequent to the entry of the Decree). The additional funds provided over the years by the Defendant to the Plaintiff or his daughter, or both, total in excess of $28,000.
According to the Plaintiff, this controversy arose as a result of her review of the Decree in 1997 to answer an unrelated question which the parties' daughter had asked. In looking at the document, the Plaintiff, purportedly for the first time, noticed the provision calling for the payment of alimony. She consulted with counsel who made demand for payment of the "arrearage" and, after her demands for payment were not met, she commenced the instant proceedings. She claims an arrearage in excess of $12,000.
As previously indicated, the Defendant claims that Plaintiff's effort to enforce the alimony provision contained in the Decree is barred by the doctrines of laches, equitable estoppel and waiver. The defenses, although somewhat similar, are distinct.
Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights that might otherwise have existed against another person who has in good faith relied upon the first party's conduct and who has been led thereby to change his position for the worse. Bozzi v. Bozzi, 177 Conn. 232, 241,413 A.2d 834 (1979). There are two essential elements to an estoppel: (1) one party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and (2) the other party, influenced thereby, must actually change his position or do some act to his injury that he otherwise would not have done.Papcun v. Papcun, 181 Conn. 618, 621, 436 A.2d 282 (1980).
Laches likewise consists of two elements: (1) there must have been a delay that was inexcusable, and (2) that delay must have prejudiced the defendant. Kurzatkowski v. Kurzatkowski,142 Conn. 680, 685, 116 A.2d 906 (1955). The mere lapse of time does not constitute laches, unless it results in prejudice to the defendant (as where, for example, the defendant is led to change his position with respect to the matter in question). Papcun v.Papcun, supra; Emerick v. Emerick, 28 Conn. App. 794, 805, CT Page 6128613 A.2d 1351 (1992). Hence, although the first element of equitable estoppel (having its basis in a party's conduct of representations) differs from the first element of laches (which is based upon a party's delay), both defenses require a showing of prejudice or detriment on the part of the other party.
Waiver is the intentional relinquishment of a known right.Olean v. Treglia, 190 Conn. 756, 773, 463 A.2d 242 (1983). In contrast to the doctrines of equitable estoppel and laches, waiver does not require a showing of prejudice or detriment on the part of the other party.
Issues of credibility obviously impact the application of the above principles. The Court finds, from the testimony and surrounding circumstances, that the parties did have a conversation soon after the entry of the Decree wherein the Plaintiff stated to the Defendant that she did not want alimony from him notwithstanding the terms of the Decree. The Court makes this finding for a number of reasons. First, the Court notes the demeanor of the parties and the certainty of their testimony. The Defendant was clear in his recollection that such a conversation took place; the Plaintiff, on the other hand, could not recall, one way or the other, whether she and the Defendant ever discussed the alimony provisions subsequent to the entry of the Decree. Second, the existence of such a discussion would explain the lengthy period of time (23 years) during which the Plaintiff did not seek to enforce payment of the alimony obligation. Were the Court not to find that such a conversation took place, it would be left with Plaintiff's explanation that she did not enforce the Decree because, notwithstanding her presence in court at the time the Decree entered, she either forgot or was unaware that alimony had been ordered. The Court finds this explanation to be untenable. Finally, and perhaps most persuasively, the Court notes the substantial funds which the Defendant voluntarily and consistently gave to the Plaintiff and his daughter over the course of more than 20 years since the entry of the Decree. It is incomprehensible that he would have gratuitously provided these additional funds while, at the same time, knowingly and intentionally violating the Decree by failing to make nominal payments of $10 per week as ordered by the court.[4]
Defendant's failure to make the alimony payments, under these circumstances, is readily understood if one accepts, as this Court does, that the parties had a discussion many years ago in which the Plaintiff disclaimed her right to alimony under the Decree. CT Page 6129
The Court finds that the Defendant has proved all of the elements required to establish the doctrines of waiver, laches and equitable estoppel. On the issue of waiver, the Court finds that the Plaintiff knew she had a right to alimony as provided in the Decree and intentionally relinquished that right in her discussion with the Defendant soon after the Decree entered. This same discussion, followed by an extraordinarily protracted period during which she did not seek to enforce her rights under the Decree, satisfy the first element required to establish laches and equitable estoppel. The prejudice or detriment which is required to establish the second element of these doctrines is likewise evident. First, the Defendant testified, and the Court finds, that no action was taken by the Defendant to modify the Decree because of his conversation with the Plaintiff and her failure to take any steps to enforce any claim to alimony. Defendant's reliance in this regard is significant because the Court believes that, had such a motion been filed, there existed a strong probability that relief would have been granted. This is so because the Plaintiff's significant increase in income, coupled with the relatively brief duration of the parties' marriage, would militate strongly against the continuation of an alimony obligation for the duration suggested by Plaintiff herein. Additionally, the Court notes that the Plaintiff's cohabitation for a period of three years soon after the entry of the Decree likewise might have constituted a basis for modification of the alimony order.[5] The Court also finds prejudice or detriment on the part of the Defendant by reason of his continued voluntary furnishing of funds to the Plaintiff and his daughter over the course of more than 20 years. It is not unreasonable to conclude that, had he known that the Plaintiff would now seek to hold him accountable for the payment of alimony under the Decree, he would not have gratuitously provided such assistance.
For all of the reasons set forth above, the Court finds that no sums are due from the Defendant to the Plaintiff pursuant to the Decree. Accordingly, Plaintiff's contempt citation is dismissed and her motion to reopen and modify is denied. For the same reasons, the Defendant's motion to open and modify is granted and the alimony provisions contained in the Decree are terminated.
The Court has also reviewed and considered (i) C.G.S. §46b-62 and the criteria set forth therein (specifically CT Page 6130 referencing the criteria of C.G.S. § 46b-82) and (ii) C.G.S. § 46b-87 (providing that the court may award a reasonable attorney's fee in contempt proceedings in favor of an alleged contemnor who has not been found in contempt). Based upon its review and consideration of the evidence and the foregoing statutory authority, it is the Court's order that each party shall be responsible for his or her respective attorney's fees. The Plaintiff's Motion to Pay for Plaintiff's Transportation Costs is denied.
Solomon, J.