# G & R Tire Distributors, Inc. *v.* Allstate Insurance Company et al.

Loiselle, Bogdanski, Longo, Peters and Parskey, Js.

Argued January 4—decision released March 13, 1979

*Sidney Axelrod,* with whom, on the brief, was *Peter Gianacoplas,* for the appellant (plaintiff).

*Snow Gene Munford,* for the appellees (defendants).

PETERS, J. The plaintiff, G & R Tire Distributors, Inc., operated a tire recapping business in a barn in Stafford Springs, Connecticut. On August 4, 1972, the building and its contents were totally destroyed by fire, the damage apparently resulting from a furnace explosion. At the time of the fire, there was in effect a "Boiler and Machinery Policy" covering the premises, issued by the defendant Allstate Insurance Company through its agent, the defendant Charles M. Sullivan, Jr.

Despite a timely request, Allstate refused to pay for any of the loss occasioned by the explosion and fire. The plaintiff then instituted the present suit in two counts. The first count, against Allstate alone, alleged that the loss was covered by the boiler and machinery policy. Allstate denied any responsibility under the policy, claiming that a furnace explosion did not constitute an "accident" under the terms of the policy because the letters "FE" did not appear on the policy schedule as a designated covered hazard. Even if a covered "accident" had occurred, policy language excluding fire-related losses would preclude recovery. The second count, against both Allstate and the defendant Sullivan, Allstate's authorized agent, alleged misrepresentation that the policy would protect the plaintiff in the event of fire resulting from a furnace explosion.

After a trial to a jury, a verdict was returned in favor of both defendants. The plaintiff's motion to set aside the verdict was denied and the plaintiff

has appealed, claiming error in four respects: (1) the court's refusal to permit one witness to testify concerning prior inconsistent statements of another witness; (2) the court's failure to charge the jury as to the meaning of the term "mistake not due to negligence"; (3) the court's charge to the jury on the second count that a verdict for the defendant Sullivan required a verdict for the defendant Allstate; and (4) the court's charge on the interpretation of the policy relating to the coverage of furnace explosions. These claims will be considered separately.

In a statement signed four months after the fire, an employee of the plaintiff, Charles Busse, stated that on the day of the fire he heard a blast and saw the boiler in flames. During the trial, Busse was called as a defense witness and testified that the fire had started in the grinding room, and not in the boiler room where the furnace was located, thus contradicting his prior written statement. The issue of the exact origin of the fire was contested, and the discrepancy was therefore material. In the presence of the jury, Busse admitted that his signed statement contradicted his trial testimony, and that both could not possibly be true. The plaintiff's attorney subsequently attempted to question a fire marshal, who had been present at the scene of the fire, concerning statements made to him on that day by Busse relating to the original location and cause of the fire. The court refused to allow the testimony, although offered solely for the purpose of establishing a prior inconsistent statement by Busse. The plaintiff claims error in that refusal.

It is an elementary rule of evidence that the credibility of a witness may be attacked by showing a

materially inconsistent prior statement. *State* v. *Addazio,* 169 Conn. 416, 425–26, 363 A.2d 153 (1975); *State* v. *Crane,* 169 Conn. 242, 245, 362 A.2d 843 (1975); see McCormick, Evidence (2d Ed. 1972) §§ 28, 34–38. Although generally a foundation should be laid before introducing evidence of a prior inconsistent statement; McCormick, op. cit. § 37; "[i]n this state, we have no inflexible rule regarding the necessity of calling the attention of a witness . . . to his alleged prior inconsistent statements before either questioning him on the subject or introducing extrinsic evidence tending to impeach him." *State* v. *Saia,* 172 Conn. 37, 46, 372 A.2d 144 (1976). Where, as here, however, the witness' attention was called to his prior inconsistent statement, and he admitted making the statement, his credibility had already been called into question and there was no need for further proof of inconsistency. The trial court is vested with liberal discretion as to how such an inquiry should be conducted; *State* v. *Saia,* supra; and its determination that additional evidence of inconsistency would be merely cumulative is not in error. See *Fishman* v. *Stamford,* 159 Conn. 116, 123, 267 A.2d 443, cert. denied, 399 U.S. 905, 90 S. Ct. 2197, 26 L. Ed. 2d 560 (1970).

The plaintiff next contends that the court erred in refusing to charge the jury as to the meaning of the term "mistake not due to negligence." In the course of its original instructions to the jury, the court explained that one of the special defenses in the case was that the plaintiff was guilty of contributory negligence for its failure to read and familiarize itself with the terms and coverage of the policy. In this connection, the court charged that "[t]he general rule is that where a person of mature years who can read and write signs or

accepts a formal written contract affecting his pecuniary interests, it is his duty to read it, and notice of its contents will be imputed to him if he negligently fails to do so; but this rule is subject to qualifications, including the intervention of fraud or artifice, or *mistake not due to negligence,* and applies only if nothing has been said or done to mislead the person sought to be charged or to put a man of reasonable business prudence off his guard in this matter." The plaintiff had no objection to that portion of the charge when it was originally given. In fact, the plaintiff conceded that the court had charged in accordance with the plaintiff's own requests to charge "as they applied to the question of contributory negligence in failing to read the policy."

On the second day of deliberations, the jury requested a recharge concerning the obligation of a policyholder to read and understand a policy. The court repeated its original charge verbatim, and only then did the plaintiff object to what it claimed was an ambiguity in the term "mistake not due to negligence." Neither the original charge nor the recharge was in error. The portion of the recharge to which objection was taken was the recital of a general rule. Although such a general rule may encompass some aspects not applicable to the particular case, it is not error to recite the rule in its generality so long as the jury are not misled as to its applicability. "It was fortuitous that the jury requested that the charge be repeated; an unobjectionable charge does not become erroneous by repetition." *Kosko* v. *Kohler,* 176 Conn. 383, 389-90, 407 A.2d 1009 (1978).

The plaintiff's third claim of error is that the court erroneously charged the jury that if they

found in favor of the defendant Sullivan on the second count, they must also find in favor of the defendant Allstate on that count. We cannot agree with the plaintiff's contention that the second count of the complaint can form a basis for liability on the part of Allstate independent of the liability of its agent, Sullivan. Whereas the first count of the complaint focused upon Allstate's liability under the terms of the policy, the plaintiff in the second count sought to apply the theory of respondeat superior in order to hold Allstate liable for any losses engendered by the misrepresentations of its agent as to coverage. Since the liability of an insurer for any fraud, misrepresentation, or wrongful act of its agent is derivative, the court's instruction was not in error. See 4 Couch, Insurance (2d Ed. 1960) § 26:433; cf. *LaBonte* v. *Federal Mutual Ins. Co.,* 159 Conn. 252, 258, 268 A.2d 663 (1970).

We turn finally to the plaintiff's claims that the court erred in various particulars in its charge concerning the interpretation of the boiler and machinery policy with respect to its coverage of furnace explosions. The plaintiff urges that the court should not have charged that the policy did not cover a furnace explosion and should have charged that the defendant Allstate was barred from reliance on the policy's furnace explosion exclusion since Allstate had not pleaded specially to that effect. The plaintiff further maintains that since there was a question concerning the policy's coverage of fire caused by a furnace explosion it was entitled to a charge on that issue.

The insurance policy contains an initial statement of coverage: "Insuring Agreement. In consideration of the Premium, the Company agrees with the

Assured named in the Declarations made a part hereof respecting *loss from an Accident, as defined herein,* occurring during the Policy Period, *to an Object, as defined herein,* while the Object is in use or connected ready for use at the Location specified for it in the Schedule, *subject to . . . the Definitions* and Conditions, to other terms of this policy and to the Schedules and Endorsements issued to form a part thereof, as follows: Section 1 Loss on Property of Assured. To Pay for loss on the property of the Assured directly damaged by such Accident (or, if the Company so elects, to repair or replace such damaged property), excluding . . . ." (Emphasis added.) There then follow eight specific exclusions from the policy's coverage.

In a separate section of the policy, under the heading "Definitions," the terms "Object" and "Accident" are defined,[1] followed by the provision: "Furnace Explosion. If the abbreviation 'FE' is entered in the Schedule opposite the description of the Object in the column captioned 'Coverage,' a sudden and accidental explosion of gas or unconsumed fuel within the furnace of said Object or within the gas passages therefrom to the atmosphere shall be an Accident to said Object, but if the abbreviation 'FE' is not so inserted, the furnace of the Object and the gas passages therefrom to the

---

[1] The relevant portions of the definitions include: "BOILERS, FIRED VESSELS AND ELECTRIC STEAM GENERATORS — BROAD COVERAGE DEFINITION OF OBJECT. 'Object' shall mean any complete vessel designated and described in the Schedule . . . ."

"DEFINITION OF ACCIDENT. As respects any Object designated and described in the Schedule for which the word 'Broad' is inserted in the column headed 'Coverage,' 'Accident' shall mean a sudden and accidental breakdown of the Object, or a part thereof, which manifests itself at the time of its occurrence by physical damage to the Object that necessitates repair or replacement of the Object or part thereof . . . ."

atmosphere shall be considered as 'outside the Object' and such an explosion shall not constitute an Accident." It is undisputed that the abbreviation "FE" was not entered in the policy schedule.

Characterization of the paragraph entitled "Furnace Explosion" provides the main focus of the dispute over policy coverage. The plaintiff contends that the paragraph constituted an exclusionary clause, removing from coverage that which otherwise would be included, and as such should have been specially pleaded by the defendant. The defendant, which did not specially plead the furnace explosion clause as a defense, avers that the clause is merely a definition of and limitation upon basic coverage, and thus need not be pleaded specially.

In support of its position, the plaintiff points to the general rule that "where a policy insures generally against a particular peril, and contains a further clause exempting the company from liability for loss caused in a certain manner, which would otherwise have fallen within the general terms of the policy, the burden is upon the insurer to allege and prove that the loss fell within the exemption. Such a clause is considered as an exemption from liability and a defense, rather than as an exception proper limiting and defining the risk covered." *Wojcik* v. *Metropolitan Life Ins. Co.*, 124 Conn. 532, 534–35, 1 A.2d 131 (1938).

This rule was applied in *Fogarty* v. *Fidelity & Casualty Co.*, 120 Conn. 296, 180 A. 458 (1935). In *Fogarty*, the defendant had issued a policy insuring the plaintiff's automobile "against loss on account of damages to, or loss of" the vehicle, "if caused by collision with any object or by upset (*excluding*

damage by fire).'' Id., 298. (Emphasis added.) The car was destroyed by a collision caused by fire, but the court held that in order for the defendant to claim the benefit of the provision excluding damage by fire, it should have specially pleaded to that effect. Id., 299–300. Since the defendant had not so pleaded, there could be no limitation of liability under the exclusionary clause. Unlike the present case, however, the phrase limiting the insurer's liability in *Fogarty* was obviously the type of "exclusionary clause" that should logically be pleaded and proved by the insurer. Collisions frequently result in fire damage, and such damage would have been covered but for the exemption.

In this case, by contrast, it would not be appropriate to characterize the "Furnace Explosion" paragraph as an exclusionary clause. First, the language appears under the section entitled "Definitions," a section that complements the agreement to insure "loss from an Accident, as defined herein . . . to an Object, as defined herein" by defining and limiting the scope of the coverage itself. Further, the policy contains eight specially enunciated exceptions to coverage, which are set out in the section entitled "Insuring Agreement." No cogent reason has been advanced why we should ignore this clearly delineated and entirely normal pattern of inclusion and exception.

This case is closely akin to that of *Wojcik* v. *Metropolitan Life Ins. Co.*, supra, in which the plaintiff was the beneficiary of an insurance policy on the life of her husband. The insurance promised payment of a lump sum upon proof of death by accident, "provided . . . that death shall not have been the result of self-destruction." Id., 534. In a

suit to recover the accidental death benefit, the defendant generally denied that the death was accidental and introduced some evidence that it might have been suicide. The plaintiff contended that since the defendant had not specially pleaded suicide as a defense, it was not entitled to the benefit of that defense. The court held that the general denial was sufficient, since suicide "cannot properly be regarded as an accident and the provision excluding it from the coverage of the policy is not in the nature of an exemption but is inserted in order to make clear the intended scope of the coverage." Id., 535. In this case, similarly, the furnace explosion language did not take away coverage granted in another part of the policy. Rather, it limited the original scope of coverage so that it was unnecessary for the defendant to plead the exclusionary language.

In view of our conclusion that the policy's furnace explosion clause was not an exclusionary provision requiring special pleading and proof, it is clear that the trial court was correct in instructing the jury that furnace explosion was not a covered hazard. The plaintiff concedes that this conclusion obviates further inquiry into coverage of fire losses caused by a furnace explosion.

There is no error.

In this opinion the other judges concurred.