[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTIONS FOR SUMMARY JUDGMENT (#197 and #198)
The plaintiff alleges the following facts in its complaint. On September 26, 1988, plaintiff loaned $5.9 million to Security Group. To help secure that loan, defendants, DiCostanzo and Petta signed a guaranty wherein they agreed unconditionally to repay the loan in the event of Security's default. Plaintiff has attached copies of the note and guaranty to its complaint. Security subsequently defaulted on the note and was foreclosed on. Plaintiff now seeks judgment against defendants, DiCostanzo and Petta in their liability on the guaranty (second count), and in their liability on the note as partners of Security (third count). Defendants object to the motion and the parties have filed supporting memoranda of law.
DiCostanzo does not deny signing the guaranty. Instead, he argues that the guaranty is unenforceable because there was no meeting of the minds. This is because, he argues, nobody explained to him that he was signing a guaranty for a mortgage note. He argues that there are issues of fact which preclude summary judgment, such as did anyone explain to him the "legal and fiscal consequences" of the guaranty on his status as guarantor, did anyone explain the consequences of his being a partner, did anyone explain to him that the guaranty related to a $5.9 million loan?
These questions of fact, however, do not demonstrate that plaintiff is not entitled to judgment in its favor. The defendant cites no authority, and the court is unaware of any, to support CT Page 8172 the proposition that plaintiff, or anyone else, was under a duty to explain the "legal and fiscal consequences" of signing a guaranty or of being a partner. The first paragraph of the guaranty states that the guarantor is agreeing to guarantee loans made that day, September 23, 1988, from plaintiff to Security Group. DiCostanzo is essentially arguing that, although he could have discovered what he was signing, he did not read the guaranty nor did anyone explain it to him.
The rule is that when "a person of mature years who can read and write signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it, and notice of its contents will be imputed to him if he negligently fails to do so." G R Tire Distributors, Inc. v. Allstate Ins. Co., 177 Conn. 58,62 (1979). See also Better Building Materials Co. v. Kirschner,142 Conn. 1, 7 (1954). DiCostanzo cannot fail to read a guaranty for a $5.9 million note, and then when it comes due, claim nobody explained it to him and he did not read it. Its terms are imputed to him, and the language of the guaranty is clear and unequivocal.
DiCostanzo, however, rightly claims that fraud is an exception to the above general rule. While this is true, it is irrelevant as there has been no fraud claimed. The only allegation in DiCostanzo's affidavit is that when presented with the guaranty to sign by defendant Corpaci, a fellow partner in Security Group, he was told that he had to hurry and sign in order to "keep things moving" for Security business. There is no allegation of any type of misrepresentation that could constitute fraud. DiCostanzo was told to hurry, but there is nothing contained anywhere in the record which would indicate anyone made any type of misrepresentation to him. See e.g. Marron Sipe Building Contracting v. Flor, 22 Conn. App. 689, 708 (1990). (fraud is the issue as intentional misrepresentation); cf. Wadia Enterprises, Inc. v. Hirschfield, 27 Conn. App. 162, 168-169
(1992) (opponent of summary judgment cannot simply claim issue of bad faith exists, but party must "bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged. . . can warrantably be inferred.") (emphasis in original) DiCostanzo has failed to carry his burden demonstrating that an issue exists as to any fraud on plaintiff's part. Accordingly, summary judgment is granted as to plaintiff's second count as there is no issue as to whether DiCostanzo signed the guaranty contract.
DiCostanzo's arguments are equally unavailing in the third count, which seeks to hold him liable as a partner. To the extent the same arguments are raised against this count as were raised against count two, those arguments likewise fail as explained above, DiCostanzo claims, for instance, that an issue exists as to whether any official from the plaintiff bank explained to him CT Page 8173 that a consequence of his being a partner was that he was presumably liable for partnership debts, particularly the $5.9 million note. Whether such an issue exists is irrelevant; by no stretch of the imagination could plaintiff be obliged to explain to all partners in all partnerships it deals with the intricacies of partnership law. The time to seek legal advice about the responsibilities of partnership was at the time of joining, not later when liable for a partnership debt.
The law of partnerships in Connecticut is straightforward on this issue. General Statutes 34-47(1) provides that "the act of every partner, including the execution in the partnership name of any instrument for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the person so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority." General Statutes 34-53 provides that all partners are liable jointly for all other debts and obligations of the partnership.
"When the words of a statute are clear and unambiguous, we assume that the words themselves express the legislature's intent and there is no need to look further for interpretive guidance." Leo Feders Sons Construction Co. v. Zoning Board of Appeals,27 Conn. App. 412, 420 (1992). There are no allegations that when Corpaci executed the note he was not carrying on in "the usual way the business of the partnership", nor that he had no actual authority to execute the note and that plaintiff knew this. Thus, under 34-47 his act bound the partnership. And under 34-53 DiCostanzo, as a partner, is jointly liable for that debt. As there is no genuine issue of material fact and plaintiff is entitled to judgment as a matter of law, summary judgment is granted, on plaintiff's third count as to DiCostanzo.
The plaintiff also seeks summary judgment against Petta, a fellow partner of DiCostanzo and also one signing the guaranty. Petta raises many of the same issues as DiCostanzo as to his liability on count two. To the extent these issues are raised, they are similarly rejected as discussed above. Petta, however, does raise one issue not raised by DiCostanzo. He claims by way of special defense that he is illiterate and was unable to read and understand the guaranty. The rule expressed in G R Tire Distributors, supra, is that one is liable in contracts whether they are read or not, applies to mature persons who can read and write." This proviso obviously means something; it is not mere surplusage.
In Southern Connecticut Gas Co. v. Ciarleglio, 2 CTLR 776 (October 25, 1990, Dorsey, J.), however, even though the defendant CT Page 8174 claimed to be illiterate the court enforced the contract against him. Id., 777-778. The court noted that "where a party realizes he has only limited information upon the subject of a contract, but treats that knowledge as sufficient, in making the contract, he is deemed to have assumed the risk of mistake." Id., 777, quoting Pacelli Bros. Transportation, Inc. v. Pacelli, 189 Conn. 401,408 (1983).
Important to that court's consideration was that the defendant had accepted benefits of the contract, and thus would not be heard to complain that the contract did not exist. Id. 778. Petta may or may not have received any benefit of this contract. Certainly, Security Group, of which he was a partner, received a loan of $5.9 million, but given his assertions that Corpaci ran everything and he did not know of the day to day activities, it is conceivable that he did not knowingly receive any benefit of the loan. If Petta knowingly received the benefits of the $5.9 million loan, his defense of illiteracy would, of course, not prevent him from being liable. There is, however, a genuine issue as to whether he is a person of mature years "who can read and write", and thus be charged with knowing the contents of the guaranty. Accordingly, summary judgment on the second count as to Petta is denied.
/s/ Kulawiz, J. KULAWIZ