[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#165)
FACTS
On January 17, 1991, the plaintiff, Bank of New Haven, commenced a foreclosure action against the defendants, Jennith Liner a/k/a Jennith L. Liner and Sheldon Liner. On March 14, 1991, the plaintiff filed an amended complaint against the defendants alleging that the defendants had defaulted on a $170,000.00 mortgage. On September 23, 1991, judgment of strict foreclosure was entered by the court, Curran, J., in the amount of $202,410.97, plus attorney fees and costs.
The foreclosure action was subsequently reopened and the defendants filed a pro se appearance on May 4, 1992. On June 8, 1992, the defendants filed a special defense and counterclaim. On August 13, 1992, the defendants filed an amended answer, special defense and counterclaim. Because the defendants' amended answer, CT Page 3147 special defense and counterclaim was an eleven page document separated only into paragraphs and did not designate which part was the answer or special defense or counterclaim, the plaintiff filed a request to revise on September 10, 1992. In response to the plaintiff's request to revise, the defendants filed a revised answer, eight special defenses and a seven count counterclaim on November 19, 1992.
On December 23, 1992, the plaintiff filed a motion to strike the defendants' eight special defenses and seven count counterclaim. On January 25, 1993, the defendants filed a memorandum in opposition to the plaintiff's motion to strike.
The purpose of a motion to strike is to challenge the legal sufficiency of a pleading. Practice Book 152; Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989). The motion to strike is the proper method to test the legal sufficiency of a counterclaim or answer including any special defense contained therein. Practice Book 152.
The motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Mingachos v. CBS, Inc., 196 Conn. 91,108, 491 A.2d 368 (1985). "In deciding upon a motion to strike, a trial court must take the facts to be those alleged in the [pleadings] . . . and cannot be aided by the assumption of any facts not therein alleged." (Citations omitted.) Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149 (1990). However, the court must construe the special defense or counterclaim "in a manner most favorable to sustaining its legal sufficiency." (Citation omitted.) Bouchard v. People's Bank, 219 Conn. 465, 471,594 A.2d 1 (1991). Therefore, the court must view the facts "in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly probable under them (Citations omitted.) Zeller v. Mark, 14 Conn. App. 651,654, 542 A.2d 752 (1988). However, where the facts provable under the allegations would not support a special defense or counterclaim, then the motion to strike must be granted. Alarm Applications Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541,545, 427 A.2d 822 (1980).
Defenses available in a foreclosure action are generally limited to payment, discharge, release, satisfaction or invalidity of a lien. Hans L. Levi, Inc v. Kovacs, 5 CTLR 260, 261 (November 4, 1991, Pickett, J.). However, foreclosure is an equitable CT Page 3148 proceeding. Reynolds v. Ramos, 188 Conn. 316, 320, 449 A.2d 182
(1982). "Because a mortgage foreclosure is an equitable proceeding, the trial court may consider all relevant circumstances to ensure complete justice is done. Id. The determination of what equity requires in a particular case is a matter for the discretion of the trial court. Id. Equity has permitted allegations of accident, mistake, fraud, Peterson v. Weinstock, 106 Conn. 436,441-42, 138 A.2d 433 (1927); an unconscionable rate of interest, Hamm v. Taylor, 180 Conn. 491, 497, 429 A.2d 946 (1980); Iamartino v. Avallone, 2 Conn. App. 119, 125, 477 A.2d 124 (1984); abandonment of security, Glotzer v. Keyes, 125 Conn. 227, 232,5 A.2d 1 (1939); usury, Atlas Realty Corp. v. House, 120 Conn. 661,666, 183 A. 9 (1936); laches, collateral estoppel, CUTPA and breach of an implied covenant of good faith and fair dealing to become valid defenses. See Citicorp Mortgage, Inc. v. Kerzner, 8 CTLR 229 (January 15, 1993, Curran, J.); Hans L. Levi, Inc., supra. "Equity may . . . afford relief to a mortgagor who can prove that equitable circumstances require withholding of foreclosure or reduction of the amount of the stated indebtedness." Olean v. Treglia,190 Conn. 756, 771, 463 A.2d 242 (1983).
"A special defense requires the pleading of facts which are consistent with the plaintiff's statement of facts, but show, nevertheless, that [the plaintiff] has no cause of action . . ." Northeast Savings, F.A. v. Dunst, 6 CTLR 333 (April 15, 1992, Nigro, J.). Practice Book section 164 provides in part:
 No facts may be proved under either a general or special denial except such as to show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that he has no cause of action, must be specially alleged. Thus, . . . duress, fraud, illegality not apparent on the face of the pleadings . . . must be specially pleaded. . . .
Since the plaintiff's complaint alleges that the defendants executed a mortgage in favor of the plaintiff and that the defendants subsequently defaulted upon that mortgage, the defendant's special defenses must address the making, validity or enforcement of the mortgage being foreclosed upon. See The Glastonbury Bank and Trust Co. v. Corbett Construction Co., Inc., 7 CTLR 519 (October 15, 1992, Walsh, J.).
1. FIRST SPECIAL DEFENSE CT Page 3149
 In the first special defense, the defendants allege that [t]he plaintiff The Bank of New Haven misrepresented the nature of the transaction to the defendant Jennith Liner and did not disclose to her before she entered the transaction that the transaction was to be considered a "commercial loan".
The plaintiff argues that the alleged failure to disclose the commercial nature of a loan is not a valid defense to a foreclosure action. The plaintiff further argues that even if the alleged nondisclosure is a valid defense, the mortgage note and deed clearly show that the loan was a commercial loan because the mortgage is entitled "COMMERCIAL MORTGAGE DEED".
The defendants argue that the alleged misrepresentation is a type of fraud and the court may consider it as a valid defense. Fraud is a valid special defense to a foreclosure action. Peterson v. Weinstock, 106 Conn. 436, 441-42, 138 A.2d 433 (1927). "The essential elements of an action in fraud . . . are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." J. Frederick Scholes Agency v. Mitchell, 191 Conn. 353, 358, 464 A.2d 795 (1983).
The defendants have specifically alleged the first element of an action in fraud, that a false representation was made. However, the defendants have failed to allege the remaining three elements of fraud in their first special defense. As a result, the defendants' first special defense does not properly allege fraud and therefore the plaintiff's motion to strike the defendants' first special defense is granted.
2. SECOND SPECIAL DEFENSE
 In their second special defense, the defendants allege that [t]he plaintiff The Bank of New Haven failed to give proper disclosure of how the "prime rate" was to be calculated, including what the maximum interest rate would be.
In the motion to strike, the plaintiff argues that the failure to disclose how the bank's "prime rate" was to be calculated is not a valid defense to a foreclosure action. The plaintiff further argues that even if the alleged nondisclosure is a valid defense, the mortgage note clearly shows how the "prime rate" was to be CT Page 3150 calculated.
The defendants' second special defense is not a valid defense to a foreclosure action because the Bank does not have a duty to explain how the "prime rate" is calculated. For example, the court in Bank of Boston Connecticut v. Security Group, 7 CTLR 310 (October 5, 1992, Kulawiz, J.) found that the bank was under no duty to explain the consequences of a guarantee agreement to the guarantor. "The general rule is that when a person of mature years who can read and write signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it, and notice of its contents will be imputed to him if he negligently fails to do so." Id, quoting G R Tire Distributors, Inc. v. Allstate Ins. Co., 177 Conn. 58, 62, 411 A.2d 31 (1979). Fraud is an exception to the above general rule. However, the defendants have not alleged that the plaintiff somehow misrepresented the "prime rate", the defendants allege only that the plaintiff failed to disclose the "prime rate".
The subject note, which the defendants signed, states that
 The interest rate applicable to the Note shall be The Bank of New Haven's prime rate (which is its best, annual commercial loan rate from time to time in effect for loans of 90-day maturity for its most responsible and substantial customers), plus 2%, which interest rate shall change on any date when such prime rate shall change.
(TERM NOTE, para. 2 "Interest Rate"). If the defendants did not understand how to calculate the prime rate after reading the note, it was their duty to inquire about it's calculation before signing the note. "Where a party realizes he has only limited information upon the subject of a contract, but treats that knowledge as sufficient in making the contract, he is deemed to have assumed the risk of a mistake." Pacelli Bros. Transportation, Inc. v. Pacelli,189 Conn. 401, 408, 456 A.2d 325 (1983); 1 Restatement (Second), Contracts 154; see also Southern Connecticut Gas Co. v. Ciarleglio, 2 Conn. L. Rptr. 776 (October 25, 1990, Dorsey, J). "If a party had any objections to the provisions of a contract he signed, he should have refused to make it. Having executed it, his mouth is closed against any denial." Southern Connecticut Gas Co., supra, 778.
In the defendants' memorandum in opposition to the plaintiff's motion to strike, the defendants argue that the rate of interest is CT Page 3151 unconscionable. An unconscionable rate of interest is a proper special defense. See Hamm, supra; Iamartino, supra. However, the defendants did not allege the unconscionability of the interest in their second special defense. The defendants simply alleged that the "prime rate" was not disclosed to them. "In deciding upon a motion to strike, a trial court must take the facts to be those alleged in the [pleadings] . . . and cannot be aided by the assumption of any facts not therein alleged." (Citations omitted.) Liljedahl Bros., Inc., supra. The "prime rate" may have been unconscionable, however, because this was not alleged in the defendants' second special defense, the court may not take unconscionability into account when deciding the subject motion to strike.
For the foregoing reasons, the plaintiff's motion to strike the defendants' second special defense is granted.
3. THIRD SPECIAL DEFENSE
In the third special defense, the defendants allege that
 [t]he plaintiff The Bank of New Haven took unfair advantage of the inexperience of the defendant Jennith Liner, and therefore the resulting transaction did not conform to her intentions.
The plaintiff argues that the alleged failure of the mortgage transaction to reflect the intentions of the mortgagor is not a valid defense to a foreclosure action.
The defendants argue that their third special defense is an equitable defense and should be allowed. See Reynolds, supra. The defendants further argue that since they have never admitted the existence of a valid contract, the special defense impliedly alleges that there was no meeting of the minds and therefore no contract.
The defendants' special defense attempts to allege fraud in the making of the subject mortgage, however the defendants have failed to allege the necessary elements of fraud. As a result, the defendants' third special defense does not properly allege fraud in the making of the mortgage and therefore the plaintiff's motion to strike the defendants' third special defense is granted.
4. FOURTH SPECIAL DEFENSE
In the forth special defense, the defendants allege that CT Page 3152
 [t]he plaintiff The Bank of New Haven failed to provide variable rate disclosure as required by Regulation Z of the federal Truth-in-Lending Act, 12 C.F.R. § 226.5b, inclusive of Section 226.5b(d)(vii), (xd) and (xii), and 226.5b(d)(5)(iii).
The plaintiff argues that 12 C.F.R. § 226.5b does not apply to the subject mortgage. Specifically, the plaintiff argues that12 C.F.R. § 226.5b applies only "to open-end credit plans secured by the consumer's dwelling" and the subject mortgage is not an open-end credit plan. See 12 C.F.R. § 226.2(a)(20).
The defendants argue that Regulation Z also applies to "closed-end" credit and therefore their defense is valid.
Even if the plaintiff was required to provide such a disclosure and failed to do so, such a failure is not a proper special defense to a foreclosure action.
"A special defense requires the pleading of facts which are consistent with the plaintiff's statement of facts, but show, nevertheless, that [the plaintiff] has no cause of action . . ." Northeast Savings, F.A., supra. If the defendants proved that the plaintiff was required to provide such a disclosure, this does not show that the plaintiff has no cause of action. As a result, the defendants' fourth special defense is not a proper special defense to a foreclosure action and therefore the plaintiff's motion to strike the defendants' fourth special defense is granted.
5. FIFTH SPECIAL DEFENSE
In the fifth special defense, the defendants allege that
 [t]he plaintiff Bank of New Haven failed to provide written disclosure to defendants Sheldon and Jennith Liner of their right to independent counsel, as required by Section 49-6d of the Connecticut General Statutes.
The defendants argue that this is another equitable defense which should be allowed if the defendants can prove that they were prejudiced by the bank's failure to make such a disclosure.
The plaintiff argues that a violation of section 49-6d of the General Statutes is not a valid special defense to a foreclosure CT Page 3153 action. The plaintiff further argues that section 49-6d does not apply, to the case at hand.
Section 49-6d does not apply to the case at hand, and even if it did apply, it is not a valid special defense to a foreclosure action. Section 49-6d states that
 (a) Each creditor shall notify a consumer debtor in writing when a mortgage loan application is filed that such debtor:
(1) May have legal interests that differ from the creditor's;
 (2) May not be required by the creditor to be represented by the creditor's attorney;
(3) May waive the right to be represented by an attorney;
 (4) May direct any complaints concerning violations of this section to the banking department.
 (b) The notice shall be written in plain language and shall be signed by the consumer debtor to acknowledge its receipt.
Specifically, the plaintiff argues that the defendants are not consumer debtors as defined by section 49-6b(3) because the loan was a commercial loan. A "consumer debtor" means any natural person to whom credit for personal, family or household purposes has been extended. General Statutes 49-6b(3). The defendants argue in their memorandum in opposition to the motion to strike that they believed the loan was a consumer loan.
The defendants did not allege they were consumer debtors as defined by the act in their fifth special defense. In light of the fact that the mortgage is entitled "COMMERCIAL MORTGAGE DEED", the defendants have failed to plead the allegations necessary to come within the purview of section 49-6d of the General Statutes.
In addition, section 49-6d applies only to first mortgage applications. "Mortgage loan" is defined as a loan which is secured by a first mortgage on one to four family residential real property located in this state. General Statutes 49-6a(2). Since the loan at hand is not secured by a first mortgage, section 49-6d
does not apply to this case. CT Page 3154
Even if section 49-6d did apply in this case, it is not a valid special defense to a foreclosure action for the following reasons. First, "[a] special defense requires the pleading of facts which are consistent with the plaintiff's statement of facts, but show, nevertheless, that it has no cause of action. . . ." Northeast Savings, F.A. v. Dunst, 6 CTLR 333 (April 15, 1992, Nigro, J.). Assuming the plaintiff was required to give notice pursuant to 49-6d, and failed to give such notice, this does not show that the plaintiff has no cause of action. Secondly, a violation of section 49-6d does not give the defendants a valid cause of action. If there is a violation of section 49-6d, the defendants remedy is to direct their complaints to the banking department. See General Statutes 49-6d(a)(4).
For the foregoing reasons, the plaintiff's motion to strike the defendants' fifth special defense is granted.
6. SIXTH SPECIAL DEFENSE
In the sixth special defense, the defendants allege that
 [t]he plaintiff The Bank of New Haven intentionally overcharged and gouged with regard to interest when defendants had no control or bargaining power, and failed to lower the interest rate in a timely manner when the occasions arose.
The plaintiff argues that overcharging interest rates is not a valid defense to a foreclosure action. Specifically, the plaintiff argues that the defense of "unclean hands" is inapplicable to a foreclosure action. New England Savings Bank v. High Ridge, Inc., 5 CTLR 110 (October 3, 1991, Leuba, J.). The defendants argue that it is, an equitable defense to an equitable action.
The defendants sixth special defense is a valid special defense. A special defense alleging an unconscionable rate of interest is a valid special defense. See Hamm v. Taylor, 180 Conn. 491,497, 429 A.2d 946 (1980); Iamartino v. Avallone, 2 Conn. App. 119,125, 477 A.2d 124 (1984). The defendants have essentially alleged that the rate of interest was unconscionable in their sixth special defense. Thus, the plaintiff's motion to strike the defendants sixth special defense is denied.
7. SEVENTH SPECIAL DEFENSE
In the seventh special defense, the defendants allege that CT Page 3155 "[t]he plaintiff The Bank of New Haven failed to give proper default notice to defendant Jennith Liner." The plaintiff argues that the failure to give proper notice of default does not show that the plaintiff has no cause of action and since this special defense does not address the making, validity, or enforcement of the mortgage, it is not a valid special defense. See Bristol Savings Bank v. Miller, 7 CTLR 517 (October 19, 1992, Aurigemma, J.). In addition, the plaintiff claims that the defendants waived J.). In addition, the plaintiff claims that the defendants waived their right to notice of default. Paragraph 6 of the note states that
 Borrowers hereby (a) waive presentment, demand, notice of demand, protest, notice of protest, and notice of nonpayment, and any other notice required to be given under the law, in connection with the delivery, acceptance, performance, default or enforcement of the Note.
The defendants do not address their seventh special defense in their memorandum in opposition to the motion to strike.
The plaintiff's motion to strike the defendants seventh special defense is granted for the following reasons. First, the defendants' seventh special defense does not attack the making, validity, or enforcement of the mortgage, nor does it show that the plaintiff has no cause of action. Furthermore, the defendants seventh special defense is not a recognized equitable defense. Second, according to the terms of the loan, the defendants waived their right to notice of default. "If a party had any objections to the provisions of a contract he signed, he should have refused to make it. Having executed it, his mouth is closed against any denial." Southern Connecticut Gas Co., supra, 778.
For the foregoing reasons, the plaintiff's motion to strike the defendants' seventh special defense is granted.
8. EIGHTH SPECIAL DEFENSE
In the eighth special defense, the defendants allege that "[t]he plaintiff The Bank of New Haven fraudulently induced defendants Sheldon and Jennith Liner to enter into the transaction." The plaintiff argues that the defendants failed to allege the essential elements of fraud and the facts to support the essential elements. The defendants argue that the plaintiff cannot simply deny the truth of the allegations and then ask that they be CT Page 3156 stricken.
The defendants' eighth special defense is simply a legal conclusion without the facts to support it. The motion to strike "admits all facts well pleaded; it does not admit legal conclusions. . . ." Mingachos, supra. In addition, the defendants have failed to allege the necessary elements of fraud. See J. Frederick Scholes Agency, supra. Therefore, the plaintiff's motion to strike the defendants' eighth special defense is granted.
In conclusion, all of the defendants' special defenses, except for the defendants' sixth special defense, are stricken for the following reasons. In their first, third, and eighth special defenses, the defendants failed to allege the necessary elements of fraud. The second, fourth, fifth, and seventh special defenses are stricken because they are not valid defenses to a foreclosure action. The defendants' sixth special defense should not be stricken because it alleges an unconscionable rate of interest which is a valid special defense to a foreclosure action.
B. THE DEFENDANTS' REVISED COUNTERCLAIM
Practice Book 116 provides that the defendants may file a counterclaim against the plaintiff provided that "each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint. . . ." The purposes underlying Practice Book 116 are "judicial economy, avoidance of multiplicity of litigation and avoidance of piecemeal disposition of what is essentially one action." Wallingford v. Glen Valley Associates, Inc., 190 Conn. 158, 161, 459 A.2d 525
(1983). In determining whether claims made in a complaint and the counterclaim are essentially "one action", a court must consider whether a substantial duplication of effort would result if each claim was tried separately. Id.
1. FIRST COUNT
In the first count of their counterclaim, the defendants allege that
 9. The plaintiff The Bank of New Haven misrepresented the nature of the transaction in the following respects:
 (a) Jennith Liner was not advised that the loan would be a `commercial loan' and that she could lose certain rights CT Page 3157 because of this;
 (b) Neither Sheldon nor Jennith Liner was advised as to how the plaintiff The Bank of New Haven was to calculate its "prime rate";
 (c) Plaintiff Bank failed to provide a variable rate disclosure as required under Regulation Z of the Federal Truth-in-Lending Act; 12 C.F.R. § 226.5b.
 10. Between the date of the transaction (June 12, 1986) and April of 1990 the plaintiff The Bank of New Haven changed the interest rate such as to overcharge Jennith Liner and Sheldon Liner.
 11. As a result of the foresaid misrepresentations, Jennith Liner and Sheldon Liner were induced to enter the transaction, and as a result they have suffered financial loss.
The plaintiff argues that the defendants are attempting to bring a counterclaim based on fraud, but they have failed to allege the necessary elements of an action in fraud. The defendants claim that it is an action in fraud and that the Bank's silence constituted a misrepresentation.
The defendants have brought a valid counterclaim sounding in fraud. "The essential elements of an action in fraud are that a false representation was made. . . ; that it was untrue and known to be untrue by the party making it; that it was made to induce the other party to act on it; and that he did so act to his injury." Paiva v. Vanech Heights Construction Co., 159 Conn. 512, 515,271 A.2d 69 (1970); see also J. Frederick Scholes Agency v. Mitchell,191 Conn. 353, 358, 464 A.2d 795 (1983); Harper v. Adametz,18 Conn. Sup. 435 (Super.Ct. 1953). The defendants have alleged the necessary elements of an action in fraud. Also, since the defendants' allegations relate to the making, validity or enforcement of the loan in question, the defendants' allegations arise out of the same transaction. As a result, the plaintiff's motion to strike the first count of the defendants' counterclaim is denied.
2. SECOND, FIFTH, SIXTH, AND SEVENTH COUNTS
The plaintiff argues that the defendants' second, fifth, sixth and seventh counts should be stricken because they all fail to CT Page 3158 relate to the making, validity, or enforcement of the loan. Specifically, the plaintiff claims that the second, fifth, sixth, and seventh counts all allege actions that occurred well after the execution of the loan and therefore the actions do not arise out of the same transaction. See Bristol Savings Bank, supra; The Glastonbury Bank and Trust Company v. Corbett Construction Co. Inc, 7 CTLR 519 (October 15, 1992, Walsh, J.).
The defendants argue that the "transaction" is not simply the making, validity, or enforcement of the note. The defendants claim that the "transaction" is the whole foreclosure proceeding.
The making of the note and the defendants' subsequent default is the "transaction" at issue. See Bristol Savings Bank, supra. For example, in The Glastonbury Bank and Trust Company v. Corbett Construction Co. Inc, the court found that the "transaction" is the defendants' execution of the note and mortgage in favor of the plaintiff, and the defendants' subsequent default. The court held that statements made subsequent to the defendants' default do not arise from the foreclosure action, and therefore the court granted the plaintiff's motion to strike the defendants' counterclaim. Id.
a. SECOND COUNT
As to the second count, the plaintiff's motion to strike should be denied. In the second count, the defendants allege that "[t]he plaintiff . . . breached its contract with [the defendants] . . . by unconscionably charging exorbitant interest rates under a method of raising rates that was not fully disclosed to them at the closing . . . . [and] as a result of this breach . . . the defendants . . . have suffered financial loss." An unconscionable rate of interest is a valid defense to a foreclosure action. See Hamm v. Taylor,180 Conn. 491, 497, 429 A.2d 946 (1980); Iamartino v. Avallone,2 Conn. App. 119, 125, 477 A.2d 124 (1984). The defendants have properly alleged that the plaintiff charged an unconscionable rate of interest.
The defendants' allegations in the second count arise out of the same transaction. The "transaction" at hand involves the validity of the note and the defendants' allegations directly attack the validity of the note. As a result, the plaintiff's motion to strike the defendants' second count is denied.
b. FIFTH COUNT CT Page 3159
As to the defendants' fifth count, the plaintiff's motion to strike should be granted for the following reasons. In the fifth count, the defendants allege that on account of this action, "Robert Hinkle, as an agent and employee of the plaintiff . . . verbally assaulted and threatened the defendants . . . in a public hallway of the Milford Superior Court . . . . [and] as a result . . . the defendants suffered fear, humiliation, discomfort, and extreme emotional distress." First, the defendants' fifth count alleges slander, which does not arise out of the transaction at hand. In The Glastonbury Bank and Trust Company v. Corbett Construction Co. Inc, 7 CTLR 519 (October 15, 1992, Walsh, J.), the court found that the transaction is the defendants' execution of a note and mortgage in favor of the plaintiff and the defendants' subsequent default. The court held that subsequent slanderous statements do not arise from the same transaction, and therefore the court granted the plaintiff's motion to strike the defendants' counterclaim.
Second, even if the court finds that slander is a valid defense to a foreclosure action, the defendants have failed to allege sufficient facts to maintain an action for slander. The defendants have failed to allege that Robert Hinkle's statements were false.
For the foregoing reasons, the plaintiff's motion to strike the defendants' fifth count is granted.
c. SIXTH COUNT
As to the defendants' sixth count, the plaintiff's motion to strike is granted for the following reasons. In the sixth count, the defendants allege that "Mr. Hinkle, an employee and agent of both plaintiffs, publicized defendant's alleged debt in violation of the federal Fair Debt Collection Practices Act,15 U.S.C. § 1692 et seq." First, since the plaintiff's alleged publication occurs after the defendants' default, it does not arise out of the same transaction.
Second, even if the allegations arise out of the same transaction, the defendants have failed to allege sufficient facts in their sixth count. The defendants have failed to allege facts evidencing that the debt sued upon was within the statute. The Act applies only to obligations incurred for "personal, family or household purposes." See 15 U.S.C. § 1692a(5). See Claar Bros., Inc. v. Baltayan, No. 30 10 24 (December 27, 1990, Flanagan, J.); CT Page 3160 Papa v. Riley, No. 09 21 84 (August 17, 1990, Stauffacher, Atty. Trial Referee). The plaintiff's complaint and the attached loan document indicates that the defendants' loan is a commercial loan.
Third, the Act expressly does not apply to "any officer or employer of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a; see also Kizer v. Finance America Credit Corporation, 454 F. Sup. 937 (D.C. Miss. 1978). "Debt Collectors", as defined by the Act, are those who regularly collect for others and do not include employees of the creditor collecting in its own name. Kizer, supra. The defendants specifically allege that Mr. Hinkle, an employee of the plaintiff, violated the Act. Since the Act does not apply to acts of an employee of the plaintiff Bank, the Act does not apply to the allegations pled in the seventh count.
For the foregoing reasons, the plaintiff's motion to strike the defendants' sixth count is granted.
d. SEVENTH COUNT
As to the defendants' seventh count, the plaintiff's motion to strike should be granted for the following reasons. In the seventh count, the defendants allege that the plaintiff's conduct of "trying to obtain money from the defendants by fraudulent and unfair manipulation of the interest rate, and in later assaulting and intimidating the defendants because they dared to stand up for their rights, constituted predicate acts under the Racketeer Influenced and Corrupt Organizations Act (RICO),18 U.S.C. § 1961 et seq." First, the alleged actions occurred subsequent to the execution and default of the subject loan and therefore the alleged actions do not arise out of the transaction at hand.
Second, the defendants have failed to allege sufficient facts in their seventh count. "In order for a party to set forth a viable claim for damages under RICO, the [defendants] must allege that the [plaintiff] committed two or more "predicate" acts which constitute a pattern of racketeering activity done in the conduct of the affairs of an enterprise. Celpaco, Inc. v. MD Papierfabriken, 686 F. Sup. 983, 987 (D. Conn. 1988)." Connecticut National Bank v. Ealahan Electric Co., No. 51 94 22 (November 6, 1992, Hendel, J.). The defendants have failed to allege sufficient facts evidencing that the plaintiff comes within the purview of the Act. A claim is subject to a motion to strike if it asserts mere conclusions of law absent sufficient alleged facts to support them. CT Page 3161 Fortini v. New England Log Homes, Inc., 4 Conn. App. 132, 134-35,492 A.2d 545 (1985). In addition, the defendants have failed to allege which sections of RICO the plaintiff has allegedly violated.
The plaintiff argues that, as a matter of law, RICO does not apply to the case at hand. RICO applies only to enterprises engaged in or having activities which effect interstate commerce. See Fields v. The National Republic Bank of Chicago, 546 F. Sup. 123,124 (1982). In Fields, a RICO action against a bank was dismissed where there was no allegation that the Bank engaged in or that its activities affected interstate commerce. The defendants have failed to allege that the plaintiff is engaged in or that its activities affected interstate commerce.
In addition, the acts alleged by the defendants are not one of the acts enumerated which constitute racketeering activity as defined by the act. See 18 U.S.C. § 1961(1).
For the foregoing reasons, the plaintiff's motion to strike the defendants' seventh count is granted.
3. THIRD COUNT
In the third count, the defendants allege that "[t]he aforesaid conduct of the plaintiff Bank was unethical, outrageous, immoral, and oppressive, and constituted unfair trade practices under the Connecticut Unfair Trade Practices Act, Section 42-110a
et seq. of the General Statutes." In addition, the defendants allege that "[a]s a result of these unfair trade practices, the defendants . . . have suffered financial loss."
The Connecticut Unfair Trade Practices Act provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts and practices in the conduct of any trade or commerce." General Statutes 42-110b(a).
The plaintiff argues that the defendants' third count should be stricken because 1.) the defendants fail to allege any ascertainable loss and 2.) CUTPA does not apply to banks.
The plaintiff's first argument is without merit. The plaintiff cites the decision in The Glastonbury Bank and Trust Co. v. Corbett Construction Co., Inc., 7 CTLR 519 (October 15, 1992, Walsh, J.) in support of its argument that an ascertainable loss must be alleged. In The Glastonbury Bank and Trust Co, "the CT Page 3162 defendants . . . failed to allege any loss or injury suffered as a result of the plaintiff's alleged violation of CUTPA." Id., 521. The case at hand is distinguishable from The Glastonbury Bank and Trust Co because the defendants in this case have alleged that they were injured by the plaintiff's acts. The defendants allege in their third count that "[a]s a result of these unfair trade practices, the defendants . . . have suffered financial loss." The defendants have alleged the necessary elements of a CUTPA claim.
Also, CUTPA applies to this case and therefore the plaintiff's second argument is without merit. The Connecticut appellate courts have not resolved the issue of whether CUTPA applies to banking activities. See Gaynor v. Union Trust Co., 216 Conn. 458, 482,582 A.2d 190 (1990).
There is a split of opinion in the Superior Court as to whether CUTPA applies to banks. Some courts have held that CUTPA does not apply to banks. See, e.g. Dwyer Products Corporation v. Lafayette Bank Trust Co., 3 Conn. L. Rptr. 283 (February 6, 1991, Maiocco, J.); The Washington Trust Co. v. Alland Assoc., 6 CSCR 454
(April 9, 1991, Leuba, J.); Bristol Savings Bank v. Sattler,4 CSCR 351 (March 29, 1989, Aronson, J.); Peoples Bank v. Horesco,1 CSCR 62 (January 22, 1986, Jacobson, J.).
However, many superior court decisions have held that CUTPA applies to banks. Southington Savings Bank v. Village Builders 
Developers, Inc., 7 CTLR 586, 587 (November 10, 1992, Berger, J.) (see list of cases which hold that CUTPA applies to banks); see also Andrus v. North American Bank, 3 Conn. L. Rptr. 434, 435 (April 3, 1991, Fuller, J.) (list of cases which hold that CUTPA applies to banks).
This court is guided by the reasoning in Economic Development Associates v. Citytrust, 3 Conn. L. Rptr. 403 (March 27, 1991, Dranginis, J.). Thus, the "issue of whether CUTPA applies to banks ultimately depends upon the type of activities in which the bank is allegedly engaged. When a bank is engaged in consumer-oriented activities, CUTPA should apply." Id; see also American National Bank v. Ginsberg, 6 CTLR 80 (February 24, 1992, Curran, J.) (CUTPA applies to banks where the transaction is consumer oriented); Evervest, Inc. v. Advest Bank, 6 CSCR 800 (July 30, 1991, Wagner, J.) (CUTPA applies to banks where the transaction is consumer oriented).
In determining whether a specific practice violates CUTPA, it CT Page 3163 is well settled that the court should apply the "cigarette rule" established by the federal trade commission. The "cigarette rule" sets out the criteria for determining when a practice is unfair:
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or other businessmen.
Sanghari v. Paul Revere Life Ins. Co., 214 Conn. 303, 311-12,572 A.2d 307 (1990); Daddona v. Liberty Mobile Home Sales, Inc.,209 Conn. 243, 254, 550 A.2d 1061 (1988). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 106,612 A.2d 1130 (1992), quoting McLaughlin Ford, Inc. v. Ford Motor Co.,192 Conn. 558, 567-68, 473 A.2d 1185 (1984). Whether a practice is unfair and therefore violates CUTPA is an issue of fact for the court. DeMotses v. Leonard Schwartz Nissan, Inc., 22 Conn. App. 464,578 A.2d 144 (1990).
"The sole inquiry at this stage of the pleadings is whether the [defendants'] allegations, if proved, state a cause of action." Babych v. McRae, 41 Conn. Sup. 280, 282 (1989, Schaller, J.). The defendants have alleged sufficient facts to support a CUTPA action alleged that the plaintiff bank is engaged in consumer-oriented activities which are allegedly deceptive and unfair as defined by the Act. The defendants have also alleged that such acts have caused them to suffer financial loss. Therefore, plaintiff's motion to strike the defendant's third count is denied.
4. FOURTH COUNT
In the fourth count, the defendants allege that
 [t]he Plaintiff Bank's failure to provide defendants . . . with proper disclosure of the calculation of interest rate and in denying defendant Jennith Liner her right to rescind the transaction (which she believed to be a consumer loan) constituted violations of the federal Truth-in-Lending Act, 15 CT Page 3164 U.S.C. § 1635.
The plaintiff argues that the Truth-in-Lending Act does not apply to this case because the Act applies only to consumer loans and the loan at issue is a commercial loan. In addition, the plaintiff argues that the defendants have failed to allege that they have been injured in the fourth count.
The defendants argue that they have alleged that they believed the loan was a consumer loan and that damages are requested in their prayer for relief.
The plaintiff's motion to strike the defendants' forth count should be granted because the defendants have failed to allege that they have been injured as a result of the allegations as set forth in their fourth count. See The Glastonbury Bank and Trust Company v. Corbett Construction Co., Inc., 7 CTLR 519, 521 (October 15, 1992, Walsh, J.). "[B]ecause the right of a party to recover is limited to the allegations of his complaint, see Lamb v. Burns,202 Conn. 158, 172, 520 A.2d 190 (1987), the defendants are precluded Conn. 158, 172, 520 A.2d 190 (1987), the defendants are precluded from presenting evidence concerning the nature and extent of the injury sustained." (Citation omitted.) Id.
The defendants have requested "damages under15 U.S.C. § 1640(a)" in the wherefore clause. However, a request for damages in the wherefore clause does not satisfy the requirement of pleading "the nature of the injury sustained" within the cause of action. As a result, the plaintiff's motion to strike the defendants' fourth count is granted.
For the foregoing reasons, the plaintiff's motion to strike is granted as to first, second, third, fourth, fifth, seventh and eighth special defenses. Further, the plaintiff's motion to strike is granted as to the fourth, fifth, sixth, and seventh counts of the defendants' counterclaim.
The plaintiff's motion to strike is denied as to the defendants' sixth special defense and the first, second, and third counts of the defendants' counterclaim.
The Court
By Curran, J. CT Page 3165