[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISSOLVE ATTACHMENT
Plaintiffs have brought the action in two counts. The first count appears to be for breach of contract in regard to payment of a note and the second for unjust enrichment resulting from the failure to pay that note.
This action was begun March 13, 1992. On or about January 4, 1993, the plaintiffs levied a prejudgment remedy attachment (P.J.R.) on Emanuel D. Moshovos' real property to the value of $115,000.00, EX PARTE without prior notice to defendant and without a hearing. CT Page 2468
The officer's return contained a description of that real property.
No hearing has been held before this to determine probable cause, or as to the procedural validity of the P.J.R.
The defendant contends that the P.J.R. should be dissolved for the following reasons:
 "a. The Plaintiffs relied upon a Commercial Waiver Clause contained in the Promissory Note ("Note"), which is the subject of Plaintiff's Complaint, however, said Waiver was not voluntarily, knowingly, and intelligently made by the defendant.
 b. The waiver language in the Note is neither in bold faced print, capital letters, or set apart in any way as to put defendant on notice as to its importance.
 c. The Attachment was levied on January 6, 1993, however, the Plaintiff's Affidavit in Support of Probable Cause was dated by Plaintiff Lewis I. Case, seven (7) months earlier, June 30, 1992.
 d. At the time the attachment was levied, there were no exigent circumstances which justified levying the Attachment EX PARTE, instead of affording the defendant an opportunity for a Notice and hearing.
 e. There is no probable cause to sustain the validity of Plaintiff's Compliant, for the reasons more fully set forth in the Special Defenses and Counterclaims filed by all of the defendants to this action. In his special defenses, Second and two Fourths, he complains that plaintiffs, without notifying or obtaining consent from him, executed a Subordination Agreement in favor of Society for Savings which subordinated the plaintiffs' Mortgage from defendant to a Mortgage to Society for Savings in the principal amount of $1,350,000.00. He alleges that this was "Bad Faith and a Breach of the Implied Covenant of Good Faith and Fair Dealing CT Page 2469 in the following ways:
 a. The plaintiffs failed to undertake reasonable efforts to ensure that the defendant Moshovas understood and consented to the terms and conditions of the original Promissory Note and Mortgage.
 b. The plaintiffs failed to advise the defendant Moshovas that even though his interest in the Property was released, the plaintiffs still had a claim or potential claim against the defendant Moshovas.
 c. The plaintiffs failed to use due diligence by agreeing to subordinate the Mortgage from defendants to the $1,350,000.00 Mortgage to Society for Savings.
 d. The plaintiffs failed to notify the defendant Moshovas of the existence of a Subordination Agreement in favor of Society for Savings.
 e. Plaintiffs failed to inform the defendant Moshovas of the potential ramifications of said Subordination Agreement."
Defendant also says that "plaintiff's execution of the Subordination Agreement without notifying or disclosing it to the defendant is an unfair and deceptive act in violation of the Connecticut Unfair Trade Practice, Conn. Gen. Stat. §42-110b."
Facts
In April 1980 the plaintiffs sold their property at 1327 Silas Deane Highway in Wethersfield (the "Premises") to Francis R. Sablone, Jr. ("Sablone"),[1] Emanuel D. Moshovos [Moshovas] (defendant) and Richard P. Kuzmak ("Kuzmak"). Sablone, defendant and Kuzmak are the makers of a purchase money promissory note in the amount of $170,000 and payable in monthly installments over a period of 17 years bearing interest at 11% per year (the "Note"). The Note was secured by a mortgage of the Premises (the "Mortgage"). CT Page 2470
The payments due on the Note on and after May 1, 1991 have not been paid, and the Note is in default.
As of January 23, 1995 the amount due on the Note is $97,886.12, principal, plus $40,661.67 interest, for a total of $138,547.79.
On March 30, 1983, defendant transferred his interest in the Premises to Sablone and Kuzmak. At that time the Note was not in default. Sablone and Kuzmak gave defendant a general release on March 31, 1983 in regard to the Premises. The next day Sablone and Kuzmak transferred a one-third interest to William Murray ("Murray"). On April 1, 1985, Kuzmak transferred his interest in the Premises to Sablone and Murray. Plaintiffs had no notice of these transfers when they occurred.
Plaintiffs were never asked to release defendant or Kuzmak from their obligations under the Note or Mortgage.
At the time defendant became involved with the subject transaction, he was a licensed real estate broker and was the "Listing agent" for the premises.
In 1980, defendant was told by Kuzmak and Sablone that they were interested in purchasing the Premises for use as an attorney's office and they all decided to purchase the Premises. In exchange for foregoing his ten percent (10%) broker's commission for sale of the Premises, Kuzmak and Sablone agreed to represent defendant at the closing of the purchase of the subject Premises, including the financing. As a result, defendant did not retain independent counsel on his own behalf.
On or about November 26, 1987 plaintiffs agreed to subordinate the Mortgage to a future mortgage in the amount of $1,350,000 to be given to Society for Savings (Society) on the Premises. No notice of this was given to defendant.
Plaintiffs agreed to this subordination to preserve the 11% rate of interest they were earning on the Note, which they believed they would not be able to obtain if the principal then due on the Note were paid to them. They believed they were secure even after subordinating their Mortgage to the CT Page 2471 $1,350,000 Society mortgage because real estate values were strong and they understood the Society financing would be used to construct a large office building which would enhance the value of the property.
On or about February 2, 1988 without notice to defendant, Sablone and Murray gave that mortgage to Society in the original principal amount of $1,350,000.
The contemplated building was constructed and payments were made on that Society note for several years afterwards.
The Society loan then went into default and the Premises were foreclosed. Plaintiffs' interest were foreclosed at that time and title vested in Society in July 1992.
Law
 I. Waiver
 A. Prejudgment Remedy
There is no question that our statute permits a waiver of the right to notice and hearing under C.G.S. §§ 52-278a to 52-278g
in commercial transactions. C.G.S. § 52-278f. This was a commercial transaction.
The defendant claims that plaintiffs must prove such waiver by "clear and convincing evidence."
Defendant had lawyers. Defendant was a knowledgeable real estate broker. Defendant signed the contract. There is a principle of Connecticut law which provides "that a party must be presumed to know the contents and meaning of a written instrument" which he accepted. Raffel v. Clark, 87 Conn. 567,571. The general rule is that where a person of mature years who can read and write signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it and notice of its contents will be imputed to him. G B Titel Distributors, Inc., v. Allstate Ins. Co., 177 Conn. 58,61-62.
Even under an obligation to prove waiver by clear and convincing evidence plaintiff has done so. CT Page 2472
B. Subordination and New Building
All that was said in regard to law in I. A. above is applicable to the subordination clause. However, the facts are different. The "subordination clause" reads as follows:
 "From time to time, without affecting the obligation of the undersigned or the successors or assigns of the undersigned to pay the outstanding principal balance of this note and observe the covenants of the undersigned contained herein, without affecting the guaranty of any person, corporation, partnership or other entity for payment of the outstanding principal balance of this note, without giving notice to or obtaining the consent of the undersigned, the successors or assigns of the undersigned or guarantors, and without liability on the part of the holder hereof, the holder hereof may, at the option of the holder hereof, extend the time for payment of said outstanding principal balance or any part thereof, reduce the payments thereon, release anyone liable on any of said outstanding principal balance, accept a renewal of this note, modify the terms and time of payment of said outstanding principal balance or join in any extension or subordination agreement, and agree in writing with the undersigned to modify the rate of interest or period of amortization of this note or change the amount of the monthly installments payable hereunder."
There is nothing in that clause which would cause a reasonable person to assume that a new building was to be built on the premises. This is reinforced by the mortgage paragraphs 3 and 16.
But paragraph 7 of that mortgage does contemplate that "Grantor shall complete and pay for . . . any structure at any time in the process of construction on the premises." In paragraph 16 Grantor is defined to mean "`Grantor and/or any subsequent owner or owners of the premises.'" Thus the construction of a new building by a future owner would be a foreseeable event. Defendant is charged with that intelligence. Section I. A. supra. CT Page 2473
II. Unconscionability
 A. Prejudgment Remedy
The Court has had the necessary "factual showing of the circumstances that led to the inclusion" of both the P.J.R. waiver and the subordination clause in the note. Hamm v.Taylor, 180 Conn. 491, 494-495; C.G.S. § 42a-2-302. This is so even though the question of unconscionability is a matter of law. Texaco, Inc. v. Golart, 206 Conn. 454, 461.
An act or a series of acts that are unconscionable comes not always in clear and formal dress. It or they may appear as harmless or helpful rather than heinous and hateful.
The factors to be considered when a claim of unconscionability is made are numerous and not limited. But as Justice Peters said in a different context, "The concept of arbitral `misconduct' does not lend itself to a precise definition but is, instead, best illustrated by example." O G/O'Connell Joint Venture Chase Family Limited PartnershipNo. 3, 203 Conn. 133, 146.
Some cases discussing unconscionable practices consider the equality of the parties' bargaining positions. Murphy v.McNamara, 36 Conn. Sup. 183, 190-194. The court cannot find these parties were not in equal bargaining positions.
All cases would seem to consider all the terms and conditions of the documents. Hamm v. Taylor, supra 494-495.
In Connecticut our courts invoke "the provisions of . . . General Statutes § 42a-2-302 to provide a framework for resolving an issue of unconscionability," at least with respect to a real property mortgage. Conference Center Ltd v.TRC, 189 Conn. 212, 225. In Iamartino v. Avallone,2 Conn. App. 119, 125-126 the court indicated that the question of unconscionability is to be considered based on "the circumstances existing at the time of the making of the contract," (quotes omitted). However, Olean v. Treglia,190 Conn. 756 would suggest actions after the time of signing a contract may be considered on the issue of unconscionability, Id. 769-770. In our case it was only the convoluted process of a transfer by defendant; the later transfer by his grantees CT Page 2474 in part to a stranger; Sablone's and the stranger's desire to build a new larger building on the premises; Sablone's and the stranger's mortgaging of the premises for the greatly expanded amount; the then subordination by plaintiffs and the later failure and foreclosure which had a possibly unconscionable impact on defendant.
The recited scenario makes it clear that plaintiffs deliberately risked the defendant's mortgage in inordinately dangerous commercial circumstances.
It was unconscionable for plaintiffs at that time to subordinate their mortgage from defendant to the grossly expanded Society mortgage without any notice to defendant.
The Court cannot find probable cause that a judgment will be rendered in this matter in the plaintiffs' favor.
Motion to dissolve is granted.
Norris L. O'Neill, J.